**Beverly CASSIDY, Plaintiff–Appellant,**

v.

**DETROIT EDISON COMPANY, Defendant–Appellee.**

No. 96–2382.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 2, 1997.

Decided March 12, 1998.

Stuart N. Dowty (argued and briefed), Pitt, Dowty & McGehee, Royal Oak, MI, for Plaintiff–Appellant.

Jessiephine W. Summerville (argued and briefed), The Detroit Edison Company, Detroit, MI, for Defendant–Appellee.

Before: NORRIS, SUHRHEINRICH, and CUDAHY,[*] Circuit Judges.

## OPINION

SUHRHEINRICH, Circuit Judge.

Plaintiff Beverly Cassidy appeals from the grant of summary judgment for Defendant Detroit Edison Company on her claim for employment discrimination under the American with Disabilities Act (ADA), 42 U.S.C.A. §§ 12101–12213 (West 1995) and the Michigan Handicappers Civil Rights Act (MHCRA), Mich. Comp. Laws Ann. §§ 37.1101–37.1607 (West 1985 & Supp.1997). After finding that Plaintiff was disabled because of her breathing condition, the district court found that Defendant had reasonably accommodated Plaintiff based on her proposed but vague recommendation for an allergen-free work environment. The district court also found that Plaintiff was estopped from claiming that she was qualified for a position because she applied for and received long term disability benefits.

Plaintiff claims that the district court erred because genuine issues of material fact exist as to: (1) whether Defendant failed to provide a reasonable accommodation; and (2) whether she ever claimed that she was disabled for purposes of the ADA. We **AFFIRM** the district court's summary judgment for Defendant because there is no genuine issue of material fact that Defendant objectively provided a reasonable accommodation given Plaintiff's proposed but vague accommodation for an allergen-free work environment. Accordingly, we need not decide whether the district court properly estopped Plaintiff from denying that she was disabled.[1]

## I.

Plaintiff Beverly Cassidy began working for Defendant Detroit Edison on August 11, 1986, as an assistant power plant operator. After exposure to "stack gas" in October 1986, Plaintiff suffered breathing difficulties. She was then hospitalized and diagnosed with "chemical bronchitis." After Defendant's medical staff examined Plaintiff, Defendant transferred Plaintiff to its corporate headquarters to work in its computer center.

Between 1986 and 1988 Plaintiff had few such breathing problems. However, from 1988 to October 1994, Plaintiff experienced numerous allergic reactions from exposure in her work environment to cleaning chemicals, diesel fumes, food odors, paint fumes, and smoke. During this period, Defendant accommodated Plaintiff by scheduling her for straight day shifts, allowing her to leave when a known allergen would be present, testing the area to comply with environmental air standards, permitting her to wear a mask and use a breathing machine, and scheduling maintenance for when Plaintiff was not present. Defendant also tested its facilities for fungus, bacteria, and mites, to find an adequate work environment for Plaintiff. Dr. George C. Hill, chief of Defendant's medical staff, observed that "it is very difficult to improve on the working conditions at any other site in the corporation for Mrs. Cassidy, since this area is air conditioned with filtered air, to affect an environment which is ideal for minimum damage to the computer records." (J.A. at 301).

On October 20, 1994, Plaintiff experienced breathing problems caused by paint fumes from a room repainted the night before. After her breathing machine failed, she was taken to an emergency room. On November 21, 1994, Plaintiff presented a return to work

---

[*] The Honorable Richard D. Cudahy, Circuit Judge of the United States Court of Appeals for the Seventh Circuit, sitting by designation.

1. Although we need not decide whether Plaintiff was estopped because of her application for and receipt of benefits, we note that the district court found that by filing for and receiving benefits under Defendant's long term disability plan, Plaintiff certified that she was unable to work "at

all" and "signifie[d]" that she is not a qualified individual with a disability. (J.A. at 46.) We note that in light of this circuit's intervening holding in *Blanton v. Inco Alloys Int'l, Inc.*, 123 F.3d 916, 917 (6th Cir.1997)(receipt of disability benefits does not, under judicial estoppel theory, preclude subsequent ADA relief), the district court's reasoning has been undermined and may no longer be valid.

note from Dr. Melvin Cohen, a psychiatrist.[2] However, Dr. Hill required more information from Plaintiff's allergist specifying her medical restrictions. Plaintiff then presented a letter, dated November 22, 1994, from her allergist Dr. Michael Rowe, stating that:

> Mrs. Cassidy's asthma seems exquisitely sensitive . . . to environmental changes and irritations. It would be most helpful if these could be kept at a minimum. This may include exposure to fluctuating temperatures, fumes, dust, and odors in the air. It may be also helpful for her to consider a home office so that she may better regulate her own environment and it is also noteworthy that she appears to have minimal to no difficulties in her home (according to the patient.)

(J.A. at 298.)

On November 28, 1994, Dr. Hill examined Plaintiff and observed "no apparent functional disability." However, Dr. Hill did not reinstate Plaintiff because of her "multiple problems" and lack of a "complete unrestricted release from her personal physician." (J.A. at 299.) Dr. Hill's medical notes reflect that he was concerned "about the safety and welfare of this patient since there have been multiple reactions and exa[ ]cerbations of asthmatic bronchitis in what is considered the environment [with] the lowest and fewest allergics and environmental contaminants in all of Detroit Edison workplace[s]." *Id.* Nevertheless, Defendant was determined "to find the best possible job for this employe[e] that would qualify for her restrictions and her severe disability." *Id.* After reviewing Plaintiff's medical history, Dr. Hill concluded on December 1, 1994, that Plaintiff's "condition remains dire with extremely poor prognosis." (J.A. at 300.) Dr. Hill recommended that Plaintiff's occupational environment be neither hot nor extremely cold and "free of allergens as is reasonably possible." *Id.*

On December 1, 1994, Dr. Michael Harbut, another of Plaintiff's physicians, recommended to Dr. Hill that Plaintiff remain off work for 60 to 90 days. Dr. Hill agreed and granted Plaintiff leave from work until March 1, 1995.

On December 28, 1994, Dr. Hill examined Plaintiff again and found "no significant abnormality." (J.A. at 302.) But he cautioned that "in view of the recurrent exa[ ]cerbation of hypersensitivity or hyperallergenicity, it is deemed not wise to return this patient to work until we have obtained the ideal work arrangements." *Id.*

Dr. Hill also requested Plaintiff's physicians to specify appropriate restrictions. On January 26, 1995, Plaintiff submitted a return to work statement from another of her physicians, Dr. Margaret Green, a partner of Dr. Harbut, stating that Plaintiff could return to a "workstation free of exposure to any agent that may trigger asthma or cause a drop in peak flow and that is well ventilated." (J.A. at 192.) At Plaintiff's deposition, Plaintiff indicated that Dr. Harbut had not further specified this restriction, stating to Plaintiff only that Defendant's medical staff "should understand it completely." (J.A. at 195.)

On January 27, 1995, Dr. Marva Jenkins Morris, an independent medical examiner, examined Plaintiff. Dr. Morris did not consider Plaintiff to be totally disabled and recommended "a location that is reasonably free of irritants and also an area where she may have some control over the environment such as use of desk-top air purifiers." (J.A. at 248.) She also recommended daily use of a peak flow meter and random use of spirometer. (J.A. at 248.)

During this time, Defendant's staff continued to assess available positions within the company to accommodate Plaintiff. However, Defendant's medical staff was concerned that the positions were incompatible with the Plaintiff's broad and non-specific restrictions. On March 21, 1995, Dr. Hill stated that he had reviewed the restrictions recommended by Plaintiff's personal physician and concluded that "[u]nder these restrictions there is no position available at Detroit Edison. However, if her physician would possibly modify these restrictions, we might be able to make a position available for her." (J.A. at 314.) On December 5, 1995, Defendant terminated Plaintiff explaining that the "Company per-

---

2. Apparently, Plaintiff had some emotional con-   cerns. However, they are not relevant here.

formed a job search and identified positions for which you have the requisite skill. However, our medical unit determined that these positions would not be compatible with your medical condition." (J.A. at 320.)

Meanwhile, Plaintiff had been pursing her legal remedies. On November 30, 1994, Plaintiff filed a claim of handicap discrimination with the EEOC. On April 28, 1995, the EEOC found no reasonable basis to support it and issued a right to sue letter. By February 1995, Plaintiff had retained an attorney, who advised Defendant's medical staff on March 1, 1995, that Plaintiff had not given them permission to directly contact her physicians and that all parties should now communicate through Defendant's legal department and her attorney.

On July 25, 1995, Plaintiff sued in state court alleging handicap discrimination by failing to accommodate her disability. Defendant removed to federal court on August 21, 1995, and later moved for summary judgment. The district court found no genuine issue of material fact that "Defendant did all that it possibly could to accommodate Plaintiff in light of her disability" and granted Defendant's motion. (J.A. at 46–47.)

## II.

Plaintiff contends that genuine issues of material fact exist as to whether Defendant reasonably accommodated Plaintiff because Defendant did not consider reassignment to a vacant position. Defendant responds that it attempted to reasonably accommodate Plaintiff, but that Plaintiff proposed only general and vague accommodations, such as a transfer to a position in an allergen-free environment, which did not exist within the company.

The ADA prohibits an employer from discriminating against "a qualified individual with a disability because of the disability" in the terms and conditions of employment. 42 U.S.C.A. § 12112 (West 1995). Disability is the threshold requirement to claim discrimination under the ADA.

The ADA defines a disability as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C.A. § 12102(2)(A). The regulations define "physical or mental impairment" as "[a]ny physiological disorder, or condition" affecting one or more specified body systems. 29 C.F.R. § 1630.2(h)(1) (1997). "Substantially limits" means an inability to perform or a significant restriction on the ability to perform as compared to the average person in the general population. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). Whether an impairment substantially limits a major life activity requires a consideration of the "nature and severity ... duration ... and the permanent or long term impact ... [of] the impairment." 29 C.F.R. § 1630.2(j)(2)(i)-(iii).

An employee demonstrates disability for purposes of the ADA by showing a substantial limitation on a major life activity, not necessarily the major life activity of working. The regulation states:

> If an individual is not substantially limited with respect to any other major life activity, the individual's ability to perform the major life activity of working should be considered. If an individual is substantially limited in any other major life activity, no determination should be made as to whether the individual is substantially limited in working.

29 C.F.R. Pt. 1630, App. § 1630.2(j). *See Bell v. Elmhurst Chicago Stone*, 919 F.Supp. 308 (N.D.Ill.1996). In the present case, the district court found that Plaintiff was disabled because of her substantial limitation on her major life activity of breathing, not of working.

To establish a prima facie case, a plaintiff must show that he or she: (1) has a disability; (2) is "otherwise qualified" to perform the essential functions of the job, with or without reasonable accommodation; and (3) was discharged solely because of the handicap. *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir.1996). A plaintiff may show this with direct evidence or indirectly with a burden shifting analysis. *Id.* at 1178. A disabled employee who claims

that he or she is otherwise qualified with a reasonable accommodation "bears the initial burden of proposing an accommodation and showing that that accommodation is objectively reasonable." *Id.* at 1183. An employer then has the burden of persuasion to show that an accommodation would impose undue hardship. 42 U.S.C.A. § 12112(b)(5)(A); *Monette,* 90 F.3d at 1183–84. The reasonableness of an accommodation is a fact issue. *Id.* at 1184.[3]

The ADA defines reasonable accommodation as:

(A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and

(B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C.A. § 12111(9).

The ADA also defines "undue hardship" as "an action requiring significant difficulty or expense, when considered in light of":

(i) the nature and cost of the accommodation needed under this chapter;

(ii) the overall financial resources of the facility or facilities involved in the provision of the reasonable accommodation; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such accommodation upon the operation of the facility;

(iii) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and

(iv) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative, or fiscal relationship of the facility or facilities in question to the covered entity.

42 U.S.C.A. § 12111(10)(B)(i)-(iv).

■■■ Under the ADA, 42 U.S.C. § 12111(9)(B), an employer need only reassign the employee to a vacant position. *Gile v. United Airlines Inc.,* 95 F.3d 492, 498 (7th Cir.1996); *Shiring v. Runyon,* 90 F.3d 827, 832 (3rd Cir.1996); *Benson v. Northwest Airlines, Inc.,* 62 F.3d 1108, 1114 (8th Cir.1995); *Tuck v. HCA Health Servs.,* 842 F.Supp. 988, 992–93 (M.D.Tenn.1992). Generally, transfer or reassignment of an employee is only considered when accommodation within the individual's current position would pose an undue hardship. *Pattison v. Meijer, Inc.,* 897 F.Supp. 1002, 1007–08 (W.D.Mich.1995). An employer may reassign an employee to a lower grade and paid position if the employee cannot be accommodated in the current position and a comparable position is not available. *Pattison,* 897 F.Supp. at 1007–08. However, a reassignment will not require creating a new job, moving another employee, promoting the disabled employee, or violating another employee's rights under a collective bargaining agreement. *Id.*[4]

## III.

■■ As the district court observed, Defendant provided several reasonable accommodations, including: initially transferring Plaintiff to the computer department after her first asthmatic attack; allowing Plaintiff to work straight days; scheduling cleaning and maintenance to occur when Plaintiff was gone; allowing Plaintiff to leave when she may be exposed to allergens; allowed Plaintiff to use her prescribed breathing appara-

---

3. Michigan handicap and employment discrimination law essentially tracks federal law. Generally, resolution of the federal claims will also resolve Plaintiff's MHCRA claims. *Id.* at 1178 n. 3; *Ashworth v. Jefferson Screw Products, Inc.,* 176 Mich.App. 737, 440 N.W.2d 101, 104–05 (1989).

4. The MHCRA does not specifically provide for reassignment, but requires accommodation for a qualified individual with a disability unless it would be an undue hardship. Mich. Comp. Laws Ann. § 37.1202(2) (West 1985). MHCRA does not require the creation of new jobs for a transfer. *Hall v. Hackley Hospital,* 210 Mich. App. 48, 532 N.W.2d 893 (1995); *Koester v. City of Novi,* 213 Mich.App. 653, 540 N.W.2d 765 (1995).

tus at work; allowing Plaintiff to use paid and unpaid leave, and testing Plaintiff's work area. (J.A. at 45.) The district court noted that based on her physicians' vague recommendations, Plaintiff requested transfers to a vacant position in a well-ventilated and allergen-free workstation that would not "trigger asthma or cause a drop in peak flow." But because Plaintiff did not "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations," the district court concluded that "Defendant did all that it possibly could to accommodate Plaintiff in light of her disability." (J.A. at 46–47.)

We agree with the district court. Plaintiff's proposed accommodation for essentially an allergen-free workplace, which Defendant attempted to locate within the company, was simply too vague to reasonably inform Defendant of a reasonable accommodation, or was otherwise simply unavailable. Defendant attempted numerous accommodations but finally concluded that there was no sufficiently allergen-free work environment within the company in which Plaintiff could perform her job. Plaintiff had the duty to propose an objectively reasonable accommodation. However, Plaintiff simply failed to create a genuine issue of material fact as to Defendant's assertions that no such allergen-free work environment existed within the company for Plaintiff. Further, Plaintiff also did not demonstrate that there were any vacant positions in such areas.

We note that between 1989 and 1995, Plaintiff applied for several transfers to open positions within the company, but was not selected. (J.A. at 328–344.) At oral argument, Defendant even conceded that Plaintiff was qualified for at least one of the positions calling for a customer serviceperson. Although Plaintiff was presumably willing to work in that position, she did not demonstrate that this position, or any of the other positions for which she had applied, were medically suitable for her as sufficiently allergen-free.

Thus, based on Plaintiff's lack of specific proposed accommodation, Defendant's previous attempts to accommodate Plaintiff, and Defendant's conclusion that it did not have a position in the company that satisfied Plaintiff's vague restrictions, there is no genuine issue of material fact that Plaintiff failed to propose or identify an objectively reasonable accommodation. Therefore, Defendant is entitled to judgment as a matter of law.

Accordingly, we **AFFIRM.**