RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0246P (6th Cir.)
File Name: 00a0246p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

MELVIN BURNS,
      *Plaintiff-Appellant,*

    *v.*

COCA-COLA ENTERPRISES,
INC.; KNOXVILLE COCA-COLA
BOTTLING COMPANY, INC.,
      *Defendants-Appellees.*

No. 98-6535

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 97-00746—Robert P. Murrian, Magistrate Judge.

Submitted: April 25, 2000

Decided and Filed: July 24, 2000

Before: BOGGS and SILER, Circuit Judges; and
DUGGAN, District Judge.[*]

_____

[*]The Honorable Patrick J. Duggan, United States District Judge for
the Eastern District of Michigan, sitting by designation.

1

_____

**COUNSEL**

**ON BRIEF:**   Richard Baker, BAKER & OLDHAM, Knoxville, Tennessee, for Appellant.  T. Harold Pinkley, John Y. Elliott, III, MILLER & MARTIN LLP, Chattanooga, Tennesee, for Appellees.

_____

**OPINION**

_____

   BOGGS, Circuit Judge.   Appellant Melvin Burns is a former employee of defendants Coca-Cola Enterprises and Knoxville Coca-Cola Bottling Company (KCC or the Company) who was constructively discharged from his position as a product deliverer after he suffered a serious on-the-job back injury in the summer of 1996.  In October 1997, Burns sued KCC in the district court, alleging that the Company's failure reasonably to accommodate his disability by providing him with a light duty job after he suffered his back injury, and its decision subsequently to terminate him, violated his rights under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq*., and the Tennessee Handicap Act (THA), § 8-5–103.  For the reasons set forth below, we affirm the district court's order granting summary judgment for KCC.

**I**

   Burns began working for KCC in May 1995 and, approximately one year later, on May 23, 1996, sustained an on-the-job injury to multiple levels of his back and spine.  Burns underwent surgery for his condition on October 15, 1996, but claims that his back injury continues to impose substantial limitations on his major life activities.  Burns's doctor certified him to return to work on January 9, 1997, with a lifting restriction of 23 pounds, which precluded him from returning to his former position as a product deliverer.

summary judgment for KCC. *See Daugherty v. City of El Paso*, 56 F.3d 695, 699 (5th Cir. 1995) (holding that reassignment is not required where the disabled plaintiff sought to escape the employer's legitimate, non-discriminatory policy requiring all employees seeking transfers from part-time to full-time positions to take a written exam); *Dalton*, 141 F.3d at 679 (holding that reassignment is not required if it would violate other employees' rights under a seniority system or collective bargaining agreement).

### III

Burns failed to comply with KCC's legitimate, non-discriminatory transfer request policy, which KCC was not required by the ADA to waive in order to accommodate his disability. Because Burns failed to request a transfer to another position within the Company that he was qualified to perform, Burns failed to establish that he is a qualified individual with a disability entitled to recover under the ADA or the THA. We therefore **AFFIRM** the district court's order granting summary judgment for KCC.

---

under the ADA"); *Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 633-34 (6th Cir. 1998) (affirming judgment for the defendant because, in proposing "only general and vague accommodations, such as a transfer to a position in an allergen-free environment," the plaintiff did not satisfy her burden of proving that there was a position within the company for which she was qualified and to which reassignment would have been a reasonable accommodation"); *Conklin v. City of Englewood*, 1996 WL 560370 (6th Cir. Oct. 1, 1996) (noting in affirming judgment for the defendant that the job that the plaintiff initially requested did not exist within the company and that the plaintiff "never applied" for the other position to which he argued he should have been transferred); *Boback v. General Motors Corp.*, 1997 WL 3613 (6th Cir. Jan. 3, 1997) (affirming judgment for the defendant because the plaintiff refused to accept seven positions offered to him by GM and failed to present evidence that he was capable of performing the essential functions of the jobs in which he was interested); *Brickers v. Cleveland Bd. of Educ.*, 145 F.3d 846, 850 (6th Cir. 1998) (affirming judgment for the defendant because the plaintiff could not perform the essential functions of the one job to which she sought to be reassigned).

Burns contends that when he returned to work in January 1997, KCC refused to accommodate his injury and failed to reassign him to an alternate position even though he asked the Company to transfer him to some job within his restrictions. Specifically, Burns alleges that the Company ignored his request for accommodation and never contacted him about an alternate position except on one occasion when it arranged for a job interview that Burns attended, but that did not result in reassignment.

Although KCC never gave Burns a layoff slip or other indication that his employment was terminated, Burns contends that he was constructively discharged as of January 1997 even though KCC had job openings for positions that Burns alleges he was qualified to perform. Burns contends that he knew about these jobs because KCC posted information about vacancies on employee bulletin boards, but that KCC never made these positions available to him. As a result of KCC's alleged failure to accommodate his disability, Burns claims that he sustained loss of income, benefits, and employment in violation of the ADA.

The following facts, relied upon by the district court, are undisputed:

Defendant [KCC] bottles and distributes Coca-Cola and Coca-Cola products in and around the Knoxville area. In early May, 1995, [Burns] applied for and was hired into a position where he was responsible for delivering product for the Company. [Burns]'s job duties included making anywhere from 20 to 30 deliveries per day, depending on each individual customer's order. When transferring the product from the delivery truck to a customer's store, [Burns] had to lift a variety of drink containers, one of which weighed approximately fifty-five pounds (the "bag-in-a-box").

In May of 1996, [Burns] was making a delivery to a store in Gatlinburg. In order to reach the product he was unloading, he had to step onto his truck, reach above him, grab the product, and pull it off the truck.

Unfortunately, one case got away from him and, when [Burns] tried to catch the product before it hit the ground, he hurt his back. Thereafter, [Burns] went inside the store, told the customer he wasn't going to be able to deliver the product, and called one of his supervisors, Mike French.

Mr. French picked [Burns] up and drove him to see Dr. Reid Bell. Dr. Bell diagnosed a pulled muscle. Thereafter, [Burns] returned to work where he was assigned to light duty within the restrictions provided by Dr. Bell. Specifically, [Burns] helped his supervisor with paperwork, rode around checking stores, training other drivers, and the like. In late August, 1996, there being no further light duty available, [Burns] left work on worker's compensation.

While away from work, [Burns] continued to see doctors. Eventually, a disc problem was diagnosed and [Burns] was referred to Dr. Joel Ragland for disc surgery. After surgery, Dr. Ragland gave [Burns] a 50-pound lifting restriction. The 50-pound lifting restriction effectively prohibited [Burns] from returning to his original position. Shortly thereafter, Dr. Ragland reduced [Burns]'s lifting restriction to 23 pounds. At that point, [Burns] knew that if he was going to continue working for the Company, then he would have to transfer to another job.[1]

(citations omitted in original).

KCC has an "Affirmative Action Program for Individuals with Disabilities, Special Disabled Veterans, and Veterans of the Vietnam Era" (hereinafter "the Plan"), designed by Coca-Cola Enterprises in Atlanta, that directs the company's Human Resource Managers reasonably to accommodate:

---

[1] The district court adopted the foregoing summary of facts from KCC's brief in support of its motion for summary judgment. The district court designated these facts as "undisputed" because Burns agreed that the facts were "essentially correct."

general request that the employer reassign her to a job that "accommodated her medical restrictions"); *Dalton*, 141 F.3d at 680-81 (affirming summary judgment with respect to those plaintiffs who failed to show they were qualified for reassignment).

Indeed, nearly all the cases that address a plaintiff's ability to recover as a "qualified individual with a disability" in light of his or her employer's affirmative duty to accommodate conclude that, although employers have a duty to locate suitable positions for disabled employees, such employees may not recover unless they propose, or apply for, particular alternative positions for which they are qualified. Given this, the district court's decision to grant summary judgment for KCC was appropriate. Burns simply did not show that he was qualified to perform the positions that he now identifies in his brief as potential accommodations.

In this case, although Burns's request for reassignment was relatively vague, KCC did make some effort to discharge its "duty" to "ascertain whether [it] ha[d] some job that [Burns] might [have been] able to fill." *Dalton*, 141 F.3d at 677 (noting that "reassignment is particularly important when the employee is unable to perform the essential functions of his or her current job, either with or without accommodation"); *see also Aka*, 156 F.3d at 1304 (stating that "[n]umerous courts have assumed that the reassignment obligation means something more than treating a disabled employee like any other job applicant"). Because prior decisions of this court hold that an employee has the burden of identifying particular positions to which he could be reassigned based on his qualifications,[7] we affirm the district court's order granting

---

[7] *See Monette v. Electronic Data Systems, Inc.*, 90 F.3d 1173, 1183 (6th Cir. 1996) (holding that "the disabled individual bears the initial burden of proposing an accommodation and showing that that accommodation is objectively reasonable" and that the defendant was entitled to prevail because the plaintiff's proposed accommodation of remaining on unpaid medical leave until another customer service or receptionist position opened up was not a "reasonable accommodation

denied, reassignment to a position for which he was otherwise qualified. Alternatively, Burns could show, which he did not, that he requested and was denied some specific assistance in identifying jobs for which he could qualify. Allowing Burns to recover despite his failure to abide by KCC's non-discriminatory policy requiring him to apply for a transfer to a new position within his restrictions would "convert a nondiscrimination statute into a mandatory preference statute, a result which would be inconsistent with the nondiscriminatory aims of the ADA." *Dalton*, 141 F.3d at 679. Of course, an employer "cannot . . . convert its responsibility to look to a 'broad range' of jobs into a 'narrow band' simply by adopting a no transfer policy," and of course "[a]ny such policy would remain subject to challenge both for any disparate impact it might impose on disabled employees, and for any unreasonable inflexibility in the face of a demand for reasonable adjustments to accommodate a disabled candidate for transfer." *Ibid.*; *see also Miller*, 107 F.3d at 486 (stating that "if the employee requests accommodation the employer must make a reasonable effort to explore the possibilities"). However, KCC's transfer request policy is not the equivalent of a no-transfer policy; it is a legitimate, non-discriminatory administrative policy with which Burns, as a KCC employee, was obligated to comply.

Thus, although KCC arguably could have (as evidenced by the tel-sell interview) considered Burns for more than one vacant position despite his failure to file more than one Transfer Request, KCC's failure to do so does not constitute a violation of its duty to accommodate Burns's disability under the ADA. Even the Seventh Circuit's decisions in *DePaoli* and *Dalton*, which specifically require employers to make an affirmative effort to locate jobs for disabled employees, hold that plaintiffs are not entitled to prevail on disability discrimination claims if they failed to propose alternate jobs for which they "satisfied their employer[s'] prerequisites and whose essential functions they could perform." *DePaoli,* 140 F.3d at 670, 675 (approving of the employer's affirmative effort to accommodate the plaintiff with a reassignment, but finding insufficient the plaintiff's

[T]he known physical or mental limitations of an otherwise qualified individual with a disability or special disabled veteran employee or applicant for employment unless the accommodation would impose undue hardship on the operation of [the Company's] business.

At KCC, Human Resources Director Edward Hinkle was primarily in charge of implementing the Plan, which defines "disability" and other terms in accordance with the ADA.

KCC also has a policy of posting all job openings within the company on bulletin boards so that employees may search for job vacancies at their leisure. If an employee desires to transfer from one position within the Company to another, the employee must initiate the transfer proceeding by filing a "Request for Transfer" form (Transfer Request) with his or her supervisor. If the employee is qualified for the position in which he or she is interested, the company will process the employee's Transfer Request and, if possible, effect the reassignment.

During the period that Burns was on leave and receiving workers' compensation, he reviewed the bulletin board postings and became aware of several vacant positions at KCC. He did not, however, apply for any of the positions at that time because he was still under medical supervision. After his doctor certified him to return to work, Burns notified Michael Taylor, KCC's Employee Relations Manager, that he would not be able to return to his original position as a product deliverer and would need to be accommodated or reassigned. Because Burns's lifting restriction precluded him from performing the essential functions of a product deliverer with or without accommodation, his request for accommodation was really a request only for reassignment. Taylor apparently referred Burns to Edward Hinkle, who subsequently opined that Burns's back condition did not render him disabled under KCC's Affirmative Action Plan or the ADA.

Burns contends that, although KCC advertised vacancies in many light duty jobs (such as route dispatcher) that he was

qualified to perform both physically and in terms of his background and education, he was only considered for two positions before KCC terminated his employment. However, Burns filed only one Transfer Request before he was terminated by KCC. In the summer of 1996, after his back injury but before his surgery, Burns filled out a Transfer Request for a computer/clerical position. Although he submitted the Transfer Request to his supervisor, who signed it and sent it to Human Resources, the request was never processed because the Company determined that Burns lacked the requisite computer and office skills. Burns did not contest the Company's decision not to transfer him and admitted in his deposition that, although he had a personal computer, could type, and was familiar with Windows and basic accounting software, he had never done any spreadsheet work or held a job that primarily involved computer work.

The second job for which Burns was considered was a telephone sales (tel-sell) position. In January 1997, after his doctor certified him to return to work, KCC contacted Burns and asked him if he would like to interview for the tel-sell position, which would have required him to discuss Coca-Cola products with potential customers over the telephone. During his interview for the position, Burns was asked why he would like to work in telephone sales, and, according to KCC,[2] he replied that he didn't know if he would because he "wasn't sure [he] would like it, but [he] could try." Based on KCC's conclusion that Burns lacked the motivation and interpersonal skills to succeed in telephone sales, KCC hired another applicant for the position. Shortly after KCC rejected him for the tel-sell position, Burns started a contracting supply business, a partnership called Rocky Top Guttering, that sold gutters and gutter-related products to contractors. When Rocky Top went out of business approximately one year later, the partners started another business, named Preferred Gutters & Siding, for which Burns was doing sales

---

[2] See also the deposition testimony of Terri Arp, the employee who interviewed Burns for the tel-sell position.

qualified, or that the employer must waive legitimate, non-discriminatory employment policies or displace other employees' rights to be considered in order to accommodate the disabled individual. Although the ADA itself does not place limits on an employer's duty to reassign disabled employees, the EEOC regulations interpreting the Act clearly prescribe the scope of an employer's obligation to accommodate such individuals.[6] According to the regulations, an employer need only reassign a disabled employee to a vacant position. *See* 29 C.F.R. pt. 1630, App. § 1630.2(o); *Gile*, 95 F.3d at 498; *Cassidy*, 138 F.3d at 634. Employers are not required to create new jobs, displace existing employees from their positions, or violate other employees' rights under a collective bargaining agreement or other non-discriminatory policy in order to accommodate a disabled individual. *See ibid.* As the Seventh Circuit observed in *Dalton*, "[n]othing in the ADA requires an employer to abandon its legitimate, nondiscriminatory company policies defining job qualifications, prerequisites, and entitlements to intra-company transfers." *Dalton*, 141 F.3d at 678 (noting that, to be "qualified" for a reassignment, the employee must "satisfy the legitimate prerequisites for that alternative position, and . . . be able to perform the essential functions of that position with or without reasonable accommodation").

In this case, Burns's failure to request a transfer to a new position for which he was otherwise qualified precludes him from recovering for discrimination under the ADA. In order to establish a prima facie case of disability discrimination under the statute, Burns must show that he requested, and was

---

[6] Although the Supreme Court has held that courts may look to the EEOC's regulations for guidance, it has cautioned that the regulations are not binding authority. *See Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 65 (1986) (stating that, "[a]s an administrative interpretation of the Act by the enforcing agency, [the] Guidelines, while not controlling upon courts by reason of their authority, do constitute a body of experience and informed judgment to which courts may properly resort [for] guidance").

Although this court has not had occasion to define the extent of an employer's obligation to reassign a qualified individual with a disability, the Seventh Circuit has held "that the ADA places a duty on the employer to 'ascertain whether he has some job that the employee might be able to fill.'" *Dalton*, 141 F.3d at 677 (quoting *Miller v. Illinois Dep't of Corrections*, 107 F.3d 483, 487 (7th Cir. 1997)). As the Seventh Circuit observed in *Dalton*:

> The employer must first identify the full range of alternative positions for which the individual satisfies the employer's legitimate, nondiscriminatory prerequisites, and then determine whether the employee's own knowledge, skills, and abilities would enable her to perform the essential functions of any of those alternative positions, with or without reasonable accommodations. The employer's duty to accommodate requires it to consider transferring the employee to any of these other jobs, including those that would represent a demotion.

*Id*. at 678 (citing 29 C.F.R. § 1630.2(j)(3)(ii)(C)). The Seventh Circuit similarly concluded in *Miller* that, "[e]ven if an employee who . . . becomes disabled while employed says to the employer, 'I want to keep working for you – do you have any suggestions?' the employer has a duty under the [ADA] to ascertain whether he has some job that the employee might be able to fill." *Miller*, 107 F.3d at 487 (ultimately affirming judgment for the defendant because the plaintiff only expressed interest in reassignment to a job that did not exist, and did not evince any interest in "jobs the essential duties of which [might have been] within her ability to perform").

We agree with the Seventh Circuit that an employer has a duty under the ADA to consider transferring a disabled employee who can no longer perform his old job even with accommodation to a new position within the Company for which that employee is otherwise qualified. We do not, however, hold that the employer must reassign the disabled employee to a position for which he is not otherwise

work for approximately 30 hours per week at the time he gave his deposition testimony in this case.

On October 8, 1997, Burns filed suit against KCC in the district court, alleging that KCC's failure to reassign him violated the ADA. The case was submitted for resolution to United States Magistrate Judge Murrian pursuant to 28 U.S.C. § 636(c) and Rule 73(b) of the Federal Rules of Civil Procedure. After answering Burns's complaint, KCC moved for summary judgment on the grounds that: (1) Burns could not show that he was "disabled" as that term is defined by the ADA; (2) Burns was not a "qualified individual with a disability" as defined by the ADA; (3) reassignment to a lighter duty job was not a reasonable accommodation; and (4) KCC was not legally required to locate, or create, a new job for Burns.

In a memorandum opinion dated August 26, 1998, the magistrate judge granted KCC's motion for summary judgment. Although the magistrate judge found that Burns had presented evidence sufficient to show that he was disabled under the ADA, he granted summary judgment for KCC because he concluded that Burns did not present evidence sufficient to allow a reasonable jury to find that he was a "qualified individual with a disability," and thus could not establish a prima facie case of discrimination under the statute. Specifically, the magistrate judge found that Burns was not a "qualified individual with a disability" because Burns could not perform the essential functions of a product deliverer with or without accommodation and failed to present evidence that he was qualified to perform another job within the Company. Burns timely appealed the district court's order granting KCC's motion for summary judgment to this court.

## II

We review *de novo* the district court's grant of summary judgment for KCC. *See Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997); *Hartsel v. Keys, 87 F.3d 795, 799 (6th Cir. 1996), cert. denied*, 117 S. Ct. 683 (1997). Summary

judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995).

### *Elements of a Prima Facie Case of Disability Discrimination Under the ADA*

The ADA prohibits an employer from discriminating against a qualified individual with a disability because of that individual's disability. *See* 42 U.S.C. § 12112(a); *McKay v. Toyota Motor Mfg., U.S.A., Inc.*, 110 F.3d 369, 371 (6th Cir. 1997). An individual is considered "disabled" under the ADA if he or she:

(A) [has] a physical or mental impairment that substantially limits one or more of [his or her] major life activities . . . ;

(B) [has] a record of such impairment; or

(C) [is] regarded as having such an impairment.

42 U.S.C. § 12102(2). The regulations accompanying the Act define "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). The term "substantially limits" with respect to an individual's ability to work is also defined in the regulations:

The term *substantially limits* means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

reassigning Burns once it became clear that Burns could no longer perform the essential functions of his former position. *See Gile v. United Airlines, Inc.*, 95 F.3d 492, 496 (7th Cir. 1996) (rejecting the defendant's argument that the "ADA does not obligate an employer to reassign an employee to a different type of position where the employee . . . can no longer perform the essential functions of the job she currently holds").[5] As the Seventh Circuit recognized in *Dalton* and in *Gile*, interpreting reassignment as a reasonable accommodation is "consistent with the language from the House Report on the bill that became the ADA:"

If an employee, because of his disability, can no longer perform the essential functions of the job that he or she has held, a transfer to another vacant job for which the person is qualified may prevent the employee from being out of work and employer from losing a valuable worker.

*Dalton*, 141 F.3d at 678-79 (quoting H.R. Rep. No. 485(II), 101st Cong., 2d Sess. (1990), U.S.C.C.A.N. 1990, 267); *see also Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1300 (D.C. Cir. 1998) (en banc) (same).

In this case, as in *Gile*, the primary issue is the extent to which an employer is "obligated to reassign [a disabled employee] to a different position when, as a result of [his] disability, [that employee can] no longer perform the essential functions of [his] job." *Ibid.* As several courts have recognized, the ADA only protects "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(9); *Gile*, 95 F.3d at 498.

---

[5]The ADA itself provides that "reasonable accommodation" may include "reassignment to a vacant position." 42 U.S.C. § 12111(9)(B); *Williams*, 101 F.3d at 349 (holding that "the district court erred in suggesting that a qualified ADA plaintiff can never rely on reassignment to a vacant position as a reasonable accommodation").

claimant is disabled depends on an individualized inquiry, the district court did not err in concluding that Burns was disabled because his back injury precluded him from performing at least 50% of the jobs previously available to him. *See Dalton v. Subaru-Isuzu Automotive, Inc.*, 141 F.3d 667, 676 (7th Cir. 1998) (holding that a "rational trier of fact could reasonably find that the substantial percentage reductions [35% - 89%] in the broad range of jobs available to [the] plaintiffs, coupled with their own testimony about the effects of their disabilities on their work as production associates, substantially limited them in the major life activity of working").

### Burns's Status as a "Qualified Individual With a Disability" Entitled to Reasonable Accommodation Under the ADA

To recover under the ADA, a plaintiff must do more than show that he is "disabled" within the meaning of the statute. He must also establish that he is a "qualified individual with a disability" by showing: (1) that he "satisfies the prerequisites for the position [he holds or desires], such as possessing the appropriate educational background, employment experience, [and] skills . . ."; and (2) that he "can perform the essential functions of the position held or desired, with or without reasonable accommodation." *Dalton v. Subaru-Isuzu Automotive, Inc.*, 141 F.3d 667, 676 (7th Cir. 1998).

As a threshold matter, there is no merit to KCC's argument that the ADA did not require the Company to consider

---

activity, considered, as a last resort, only "[i]f an individual is not substantially limited with respect to *any other* major life activity." *Ibid.* (quoting 29 C.F.R. pt. 1630, App. § 1630.2(j) (1998)) (emphasis added by Court). The Court did not, however, rule on whether an individual's relative inability to work constitutes a disability under the ADA because that issue was not disputed by the parties. *See ibid.* ("Because the parties accept that the term 'major life activities' includes working, we do not determine the validity of the cited regulations").

29 C.F.R. § 1630.2(j)(3)(i). In determining whether a claimant is significantly restricted in his ability to perform "either a class of jobs or a broad range of jobs in various classes," courts generally consider:

(i) The nature and severity of the [claimant's] impairment;

(ii) The duration or expected duration of the impairment; and

(iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j)(2)(i)-(iii). The regulations further provide that courts may consider the following additional factors:

(A) The geographical area to which the individual has reasonable access;

(B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or

(C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

29 C.F.R. § 1630.2(j)(3)(ii)(A)-(C).

To recover under the ADA, a plaintiff must not only be disabled; he or she must be a "qualified individual with a disability," which the ADA defines as:

[A]n individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual *holds or desires . . . .*

42 U.S.C. § 12111(8) (emphasis added).  In order for a qualified individual with a disability to establish a prima facie case of discrimination under the ADA, he must show that:

(1)  [he] is a disabled person within the meaning of the Act;

(2)  [he] is qualified to perform the essential functions of [the job he holds or desires] with or without reasonable accommodation; and

(3)  [he] suffered an adverse employment decision because of [his] disability.

*McKay*, 110 F.3d at 371 (quoting *Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1185 (6th Cir. 1996)).

### Burns's Status as a "Disabled Individual" Under the ADA

Because the ADA prohibits KCC only from discriminating against a "qualified individual with a disability because of [that] disability," Burns's ability to show that he is "disabled" within the meaning of the statute is a "threshold requirement" for recovery under the Act. *Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 633 (6th Cir. 1998) (quoting 42 U.S.C. § 12112).  Again, a plaintiff claiming that he is disabled because an injury or condition substantially limits his ability to engage in the "major life activity" of working must show that he is "significantly restricted in [his] ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person with comparable training, skills, and abilities."  *McKay*, 110 F.3d at 371

reassignment on the basis that he lacked the clerical, computer, and interpersonal skills necessary for office or other light-duty jobs, including that of route dispatcher because that job involved statistical analysis of routes and customer needs.  Again, although the "inability to perform a single, particular job does not constitute a substantial limitation," 29 C.F.R. § 1630.2(j)(3)(i); *Sutton*, 119 S. Ct. at 2151 ("To be substantially limited in the major life activity of working . . . one must be precluded from more than one type of job, a specialized job, or a particular job of choice"), "an employer cannot avoid liability by showing that the employee is still generally capable of doing some economically valuable work in the national economy."  *DePaoli v. Abbott Laboratories*, 140 F.3d 668, 672 (7th Cir. 1998) (distinguishing the "residual function" test used in Social Security Act cases).  Thus, the Seventh Circuit concluded in *DePaoli* that the district court's grant of summary judgment to the defendant on the plaintiff's disability claim was "premature" because the plaintiff presented evidence that she was "precluded from more than merely the Abbott production line job."  *Id.* at 673.

In sum, because working is generally accepted as a major life activity,[4] and because the determination whether a

---

[4] *See McKay*, 110 F.3d at 372; *Williams*, 101 F.3d at 349; *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 724-27 (5th Cir. 1995) (stating that "[o]ther major life activities could include lifting, reaching, sitting, or standing").

The Supreme Court has, however, questioned in dicta whether "working" should be considered a major life activity under the ADA. *See Sutton v. United Air Lines, Inc.*, 119 S. Ct. 2139 (1999) (holding that the "determination of whether an individual is disabled should be made with reference to measures that mitigate the individual's impairment, including, in this instance, eyeglasses and contact lenses").  In *Sutton*, the Court entertained on the merits the plaintiffs' claim that they were substantially limited in the major life activity of working, but remarked that "there may be some conceptual difficulty in defining 'major life activities' to include work." *Id.* at 2151.  As the Court went on to explain, "even the EEOC has expressed reluctance to define 'major life activities' to include working and has suggested that working be viewed as a residual life

*Glidden Co.*, 85 F.3d 227, 229 (5th Cir. 1996) (holding that a plaintiff whose lifting restrictions allowed him to lift 50-pound containers for a maximum of three to four hours a day did not render him disabled under the ADA because the restrictions only prohibited him from performing one of the "discrete task[s]" associated with the "single, particular job" of a loading truck driver); *Gutridge v. Clure*, 153 F.3d 898, 900-01 (8th Cir. 1998) (holding that a trained computer technician's carpal tunnel syndrome did not render him disabled under the ADA because he could "still function as a computer repair technician"). *But see Williams v. Channel Master Satellite Systems, Inc.*, 101 F.3d 346, (4th Cir. 1996) (holding, "as a matter of law, that a twenty-five pound lifting limitation particularly when compared to an average person's abilities – does not constitute a significant restriction on one's ability to lift, work, or perform any other major life activity").[3]

KCC argues on appeal that Burns's lifting restriction did not substantially limit his ability to work. However, KCC validated to some extent the district court's conclusion that Burns was limited to seeking employment primarily in fields involving heavy manual labor when it denied him

---

[3]In support of its position, KCC relies on the Fourth Circuit's decision in *Williams* that a twenty-five pound lifting restriction could not, *as a matter of law*, substantially limit the major life activity of working. *Williams*, 101 F.3d at 349. However, the Fourth Circuit's decision on this issue conflicts with the ADA's directives that the determination whether an impairment substantially limits a major life activity must be made on an *individual* basis, and that the impaired individual's ability to work must be compared not with "an average persons's abilities," *ibid.*, but with the abilities of a person with "comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i); *see McKay*, 110 F.3d at 373; *DePaoli v. Abbott Laboratories*, 140 F.3d 668, 672 (7th Cir. 1998) (the determination whether an individual is "disabled" under the ADA is "an individualized one, and must be determined on a case-by-case basis"). It is obvious that a lifting restriction would substantially limit a manual laborer's ability to work to a far greater extent than it would limit that of an accountant, lawyer, or teacher. *See, e.g., Gutridge*, 153 F.3d at 900-01 (holding that a lifting restriction did not substantially limit a computer technician's ability to engage in the major life activity of working).

---

(quoting 29 C.F.R. § 1630.2(j)(3)(i)). As prior decisions of this court and the regulations interpreting the ADA make clear, the "inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Ibid.* However, as the Supreme Court recently observed, "whether a person has a disability under the ADA is an *individualized* inquiry," so a physical condition that would not substantially limit one person's ability to work could substantially limit another's depending on each person's occupation and range of qualifications. *Sutton v. United Air Lines, Inc.*, 119 S. Ct. 2139, 2147 (1999) (emphasis added) (quoting 42 U.S.C. § 12102(2) for the proposition that, when evaluating a plaintiff's right to recover under the ADA, a court must determine whether the claimant's impairment "substantially limits [*his* or *her*] major life activities" (emphasis added)); *see also Bragdon v. Abbott*, 524 U.S. 624 (1998) (similar); 29 C.F.R. pt. 1630, App. § 1630.2(j) ("The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual").

The district court concluded that Burns was "disabled" as that term is defined in the ADA because his injury precluded him from performing at least 50% of the jobs that he was qualified to perform given his educational background and experience. The district court distinguished this court's decision in *McKay*, in which the panel found that the plaintiff's ten-pound lifting restriction did not render her disabled under the ADA, on the basis that the plaintiff in *McKay* was a 24-year-old woman in the process of completing her teaching certification who, by reason of her age and education, was qualified to perform a wide variety of jobs that did not involve lifting. Specifically, the district court found that Burns, unlike the plaintiff in *McKay*, was limited by his age, education, and experience to performing jobs that involved medium to heavy lifting and other forms of manual labor. *See McKay*, 110 F.3d at 373 (noting that, although the plaintiff's disability rendered her incapable of performing medium and heavy physical labor, the plaintiff's

own occupational specialist admitted that even her prior job did not involve such work, and that she was qualified to perform a wide variety of jobs that would not involve such work).

Because the ADA itself sheds "little light on what it takes to substantially limit the major life activity of working," *DePaoli v. Abbott Laboratories*, 140 F.3d 668, 672 (7th Cir. 1998), it is permissible for this court, in reviewing the district judge's decision that Burns is disabled, to look for guidance to the EEOC's implementing regulations, which define "substantially limits" as:

> [S]ignificantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.

*Ibid.* (quoting 29 C.F.R. § 1630.2(j)(3)(i)). Although the regulations do not define the terms "class of jobs" or "broad range of jobs," the Appendix to Part 1630 provides examples of relevant limitations, notably:

> [A]n individual who has a back condition that prevents [him] from performing any heavy labor job would be substantially limited in the major life activity of working because [his] impairment eliminates his . . . ability to perform a class of jobs. This would be so even if the individual were able to perform jobs in another class, e.g., the class of semi-skilled jobs.

*DePaoli*, 140 F.3d at 672-73 (quoting 29 C.F.R. Pt. 1630, App. § 1630.2(j)).

In making the requisite individualized inquiry as to whether a claimant is "disabled" for purposes of the ADA, courts may consider a wide variety of factors. *See Sutton v. United Air Lines, Inc.*, 119 S. Ct. at 2147 (citing 42 U.S.C. § 12102(2)); 29 C.F.R. § 1630.2(j)(2). Specifically, the EEOC regulations interpreting the Act provide that, in determining whether a claimant is disabled because he is significantly restricted in

his ability to perform "either a class of jobs or a broad range of jobs in various classes," a court may consider:

> The job from which the individual has been disqualified because of an impairment, and the *number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs)*.

29 C.F.R. § 1630.2(j)(3)(ii)(B) (emphasis added). In making this determination, the reviewing court must decide whether the plaintiff is restricted in his or her ability to perform either "a class of jobs or a broad range of jobs in various classes" by reference to "the average person having *comparable* training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i) (emphasis added); *McKay*, 110 F.3d at 373 (same); *Thompson v. Holy Family Hosp.*, 121 F.3d 537, 539-40 (9th Cir. 1997) (same).

Given that the determination of whether a claimant is disabled is made on an individual basis, and that the court may consider the manner in which a claimant's personal education and prior work experience limits his ability to pursue employment in other sectors of the economy, the district court's conclusion that Burns is disabled was reasonable and does not conflict with decisions by this and other circuits that similar lifting restrictions do not render claimants "disabled" under the ADA. *See McKay*, 110 F.3d at 373 (citing *Jasany v. United States Postal Serv.*, 755 F.2d 1244, 1249 (6th Cir. 1985)) (rejecting the plaintiff's ADA claim because her impairment "disqualifie[d] her from only the narrow range of assembly line manufacturing jobs that require repetitive motion or frequent lifting of more than ten pounds," and thus did "not significantly restrict her ability to perform a broad range of jobs in various classes"); *Thompson*, 121 F.3d at 540 (finding that a registered nurse's inability to lift more than 25 pounds on a regular basis did not render her disabled because she presented "no evidence that the restrictions on her ability to perform total patient care preclude[d] her from . . . an entire class of jobs"); *Ray v.*