**Karen F. PELTIER, Plaintiff**

v.

**UNITED STATES of America, Defendant**

No. 3:00CV7432.

United States District Court,
N.D. Ohio,
Western Division.

Jan. 22, 2003.

Joel J. Kirkpatrick, Law Office of Joel Kirkpatrick, Toledo, OH, for plaintiff.

Lawrence J. Kiroff, Office of the United States Attorney, Toledo, OH, for defendant.

## ORDER

CARR, District Judge.

This is an employment discrimination case in which a former secretarial/clerical employee of a federal law enforcement agency[1] claims that she was denied a

---

**1.** The briefs and exhibits in this case have been filed under seal because they reference and contain grand jury and other confidential material.

transfer from an office in Toledo, Ohio, to the agency's office in the Cleveland, Ohio, area due to her gender. She also claims that the agency terminated her due to her gender and a disabling psychological condition, which, she claims, rendered her incapable of continuing to work in the Toledo office, and which, she also claims, could have been accommodated had the agency accepted her request for a transfer.

Pending are cross-motions for summary judgment. For the reasons that follow, the defendant's motion shall be granted and the plaintiff's motion shall be denied.

Plaintiff began working in 1990 for the agency. Sometime in 1992 she began to complain to agency officials about hostile working conditions in the office, which had about ten employees. Three law enforcement agents were making similar complaints, which related to allegedly improper and, according to plaintiff and others making the complaints, possibly illegal and intolerable conduct by one of the other agents.

In 1996, plaintiff unsuccessfully applied for an open position in the Cleveland area office. At the time she made her application, which would have placed her at a higher grade level, nothing she submitted with her request for the position put the agency on notice that she sought to move from the Toledo to the Cleveland office because of the working conditions in the Toledo office. Neither she nor the other two applicants who, like the plaintiff, had been interviewed for the position, was appointed to it. She made no written complaint about the failure to appoint her to the Cleveland area position.

At about the time that the plaintiff was applying for the Cleveland area position, two Toledo special agents, both male, had filed formal complaints of discrimination, in which they complained about the working conditions in the Toledo office. Each sought a transfer, which the agency granted. Each agent was transferred to the office of his choice (one to Miami, the other to Charlotte, North Carolina). At the time of the transfers, those offices had open positions, to which the male agents were assigned.

Plaintiff claims that she was subjected to disparate treatment, in that she and the two male agents concurrently sought to be assigned elsewhere, her request was denied, and those of the male agents were granted. The agency contends that the plaintiff's request, unlike that of the male agents, was for appointment to a new position at a higher grade, and that she had not notified the agency in her request that she sought to move due to the conditions in the Toledo office.

The second aspect of plaintiff's complaint of disparate treatment due to her gender relates to an internal agency investigation that focused, in part, on her.

In April, 1997, a serious crime, resulting in fatal injuries to its victim, occurred. Suspicion immediately focused on the victim's husband. The agent about whom plaintiff and the other agents had been complaining was assigned as the case agent. This assignment was an important opportunity for the agent, and how she handled the case could affect her chances for promotion.

Acting as case agent, she prepared a search warrant for the suspect's residence. As part of that process, she prepared an operational plan, which she had plaintiff fax to the Cleveland office. In addition, another agent asked plaintiff to make a hotel reservation at a Ramada Inn for two agents, who were to come to Toledo to provide expert forensic assistance following the search.

As a result of these activities, plaintiff was aware of the case agent's plans, preparation of the search warrant, and the hotel

arrangements for the out-of-town experts. She did not know, however, that, after she had been asked to make those hotel arrangements, other agents had decided to have the forensic experts stay elsewhere.

When the search was conducted, agents discovered a paper napkin on the suspect's kitchen table with handwriting that appeared to be that of the suspect. His notations included the initials "S.W.", "Ramada", and "12:00" (the time at which the search was to be conducted). The search did not uncover some of the items that the agents had anticipated finding, and the condition of the premises suggested that items may have been removed sometime prior to the search.

Those facts, in light of the notations on the napkin, caused the agency to suspect that the target of the search was aware that it was to occur. Because the plaintiff had been told to make reservations at the Ramada Inn, but had not been told about the change in accommodations, primary suspicion focused on her as the source of the leak.

Her motive, the agency believed, was to sabotage the work of the case agent, about whose conduct she had been complaining for nearly five years. Though the agency did not believe that she had directly notified the target of the search, it concluded that she may have notified another agent who also had been complaining about the case agent. This agent, with whom plaintiff had a close personal relationship, was not one of the agents who had been transferred to Miami and Charlotte. The agency believed that he may have been the individual who may have alerted the target about the search.

The agency asked the plaintiff to take a polygraph examination. The examiner concluded that her answers to two critical questions were deceptive. The agency placed the plaintiff on paid administrative leave pending the outcome of its investigation into the apparent leak.

The agency presented the results of its investigation to a grand jury. No indictment was returned, however, because the agency learned an entirely innocent explanation for the notations from the target. Once the agency learned this information, it concluded that plaintiff had not engaged in any wrongdoing whatsoever. It terminated its investigation of her and the agent who had also been under scrutiny.

Plaintiff's second gender discrimination claim is that the agency's post-search investigation of her possible involvement in the apparent leak of information about the search was far more extensive and intrusive than its investigation of the male agent on whom the agency's investigation concurrently had been focused.

As a result of the hostile working conditions and investigation, plaintiff was treated for stress and depression. After the agency terminated the investigation in the plaintiff's favor, it instructed her to return to work effective September 22, 1997. She did not do so. Plaintiff contends that, due to her psychological condition, she was unable to return to work in the Toledo office. She wanted a transfer to the Cleveland office. There was, however, no open position in that office for which the plaintiff was qualified.

On August 1, 1997, plaintiff had filed a discrimination complaint with the agency. She alleged that the investigation about the possible leak was undertaken in retaliation for her complaints to the agency about hostile working conditions in the Toledo office. The agency found no probable cause for her claim. Plaintiff appealed that finding to the EEOC, which likewise found no probable cause for her claim that the criminal investigation was related to her complaints about working conditions in the Toledo office.

In the meantime, the male agent whom the agency had investigated sought, and was granted, a transfer to the Detroit office. He likewise had been complaining about intolerable working conditions in the Toledo office, where he had been the Supervisory Agent in charge. When transferred to Detroit, that agent was no longer in a supervisory position. As with the transfers of the other two male agents, the agency has shown that the position into which this agent was transferred was open at the time of the transfer.

Because the plaintiff failed to return to work, the agency undertook to terminate her employment. An Administrative Law Judge upheld plaintiff's termination, and the Merits Systems Protection Board affirmed the Judge's decision.

The gravamen of plaintiff's disability claim is that she was psychologically incapable of returning to work in the Toledo office, and defendant failed to accommodate her condition when it refused to transfer her to the Cleveland area office. She contends that her disabling condition would have been resolved were she placed in another office, away from the stressful conditions in the Toledo office which caused her inability to work there.

## Discussion

■ Viewing the evidence most favorably for the plaintiff, she has shown that she and the three male agents were equally subjected to allegedly hostile working conditions.[2] Citing the requirements of *Mitchell v. Toledo Hospital,* 964 F.2d 577, 583 (6th Cir.1992), defendant asserts, however, that the plaintiff and the male agents were, however, not similarly situated, in that plaintiff was a secretary/clerk, while the males were Special Agents. That argument misses the point, which is that all were equally subjected to, complained about, and sought to move elsewhere due to an allegedly hostile working environment. The jobs each held and work each did are immaterial.

■ Plaintiff has not, however, shown that the agency treated her unequally. Even if her 1996 application for a new position were viewed, as plaintiff describes it, as a request for transfer, rather than as a request for appointment to a new position, she was not treated in a disparate manner. She failed to inform the agency that the working conditions in Toledo motivated her application. The position she sought, moreover, was at a higher grade level. She, like two other female applicants, was not hired following interviews.[3]

Most importantly, the circumstances of the male agents and the plaintiff were not equivalent. The males each sought a transfer, not appointment to a new position. They, unlike plaintiff, based their requests directly on the conditions in the Toledo office. They were transferred to

---

**2.** I make no finding, because it is not necessary to do so, as to whether the conditions were, in fact, hostile to the point of intolerability. What matters is that plaintiff, a female, and three male co-workers were subjected to the same conditions.

**3.** I agree with plaintiff, however, that the failure to accept her application constituted an "adverse employment action." As a general rule, failure to transfer that does not involve a change in salary, benefits, or any other aspect of employment is not an actionable "adverse employment action." *LePique v. Hove,* 217 F.3d 1012, 1013 (8th Cir.2000). Here, however, denial of plaintiff's application foreclosed her from receiving a higher salary and caused her to remain in an environment that, a reasonable jury could find, had adversely affected her psychological well-being, and deprived the plaintiff of an opportunity to work under conditions that would not have had that effect. In such circumstances, failure to transfer the plaintiff constituted an adverse employment action, even though she had not informed the agency that those conditions motivated her application.

open positions, while plaintiff competed for a position at a higher grade level. Plaintiff has not shown that the person appointed to that position was male, or that her qualifications were comparable.

■ With regard to plaintiff's claim of disparate treatment during the investigation following the apparent leak of information to the target of the search warrant, I find that she has shown that the investigation of her was more vigorous than it was of the agent who also was under suspicion. I conclude, however, that, in view of the fact that she was on paid administrative leave while being investigated and thereafter was completely exonerated and allowed to return to her position with the agency, she did not suffer an adverse employment action as a result of any difference in the scope and intensity of the investigation.[4]

■■ A jury could find that plaintiff is disabled, in that a psychological condition, which was caused by the adverse environment in the Toledo office and the criminal investigation, renders her unable to continue to work in that office. The issue with regard to her disability claim is, therefore, whether the agency could have accommodated her request for a transfer. If so, her termination was unlawful due to failure to accommodate her disability by placing her in an office where she would not encounter conditions causing her psychological impairment.

The issue with regard to plaintiff's disability discrimination claim, is, therefore, whether the agency improperly failed to assign her to its Cleveland area office.

This was the only option proposed by the plaintiff, because she wanted to continue to remain living within commuting distance of her workplace. The agency has submitted evidence that no position in that office was open when the plaintiff asked for such accommodation during Merits Systems Protection Board proceedings following her termination. Like the plaintiff in *Smith v. Ameritech*, 129 F.3d 857, 867 (6th Cir.1997), the plaintiff here "has failed to show that any positions that would accommodate [her] disabilities were vacant...." The American With Disabilities Act, the court noted in *Smith*, "does not require employers to create a new position for a disabled employee...." *Accord, e.g.*, *Burns v. Coca–Cola Enters., Inc.*, 222 F.3d 247, 257 (6th Cir.2000) ("Employers are not required to create new jobs, displace existing employees from their positions, or violate other employees' rights under a collective bargaining agreement or other non-discriminatory policy in order to accommodate a disabled individual."). The government, accordingly, is entitled to summary judgment on plaintiff's claim that she was subject to unlawful discriminatory treatment on the basis of a disability.

### Conclusion

In light of the foregoing, it is

ORDERED THAT defendant's motion for summary judgment be, and the same hereby is granted.

So ordered.

---

4. In any event, the plaintiff has not shown that the agency's legitimate articulated reason for its differential treatment of her during the investigation is pretextual. Plaintiff alone knew about the request to house the forensic agents at the Ramada Inn, and she was unaware that those plans had been changed. She had an apparent motive to undercut the case agent. Most importantly, the polygraph examiner had concluded that her answers to the most crucial questions in the examination had been deceptive. Plaintiff disputes none of these facts, and they suffice to justify the more intense investigation to which the agency subjected the plaintiff.