98 F.3d 1341
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Thomas J. CONKLIN, Plaintiff-Appellant,
v.
CITY OF ENGLEWOOD, OHIO, Defendant-Appellee.
 No. 95-3786.
 United States Court of Appeals, Sixth Circuit.
 Oct. 1, 1996.
 
 Before: KENNEDY, WELLFORD, and SILER, Circuit Judges.
 SILER, Circuit Judge.
 
 
 1
 Plaintiff Thomas J. Conklin appeals the district court's grant of summary judgment to defendant City of Englewood ("Englewood") on his claims of sex and disability discrimination pursuant to the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(1). On appeal, Conklin claims that he has a "disability" and that he was denied a reasonable accommodation by Englewood, his former employer.[1] For the reasons that follow, we affirm.
 
 I. FACTS
 
 2
 As an Englewood police officer, Conklin injured his ankle while pursuing a suspect in December 1991. He was treated for a sprain, prescribed Advil, given an ankle wrap, and released the same day. He quickly returned to work and continued his full-time duties as a patrolman from December 1991 to September 1992. His duties included "[t]aking reports, answering calls for service, traffic, driving around in the cruiser, relieving the dispatchers if they needed relieved [sic], [and] follow-ups on reports." During this same time, he conducted routine domestic tasks such as taking his children to ball games, visiting family, and grocery shopping. In his deposition, Conklin stated that, after his ankle injury, he was unable to perform yard work, climb (e.g., to clean his roof gutters), or walk because of pain.
 
 
 3
 The ankle injury apparently worsened, and Englewood placed Conklin on light-duty status in September 1992.[2] His light-duty tasks consisted of background checks, follow-up investigations, and evidence technician assignments. In March 1993, Englewood officials informed Conklin that there was no more light-duty work available for him. Unable to perform his duties as a police officer, Conklin used his accumulated time for vacation, compensated leave, and sick leave. He received full compensation and benefits through April. Once his compensated leave time was consumed, he was required to seek approval from Englewood officials to file for unpaid leave status. Conklin claims that he was "put on a no pay status involuntarily."
 
 
 4
 To show his desire to work, Conklin presented a letter from his doctor in June 1993 and informed Englewood that he was available to work within the restrictions imposed by the doctor. The doctor's letter restricted him from running, jumping, twisting, or being on his feet for any lengthy period of time. Conklin preferred the position of dispatcher as his light-duty accommodation.
 
 
 5
 Conklin's initial request for unpaid leave status was granted by Englewood. However, Conklin subsequently informed Englewood officials that he no longer requested unpaid leave status. Englewood discovered that he was performing investigative work for a private employer without Englewood's authorization. Misconduct charges were brought against him, and after a hearing, the Chief of Police recommended that he be discharged. The Chief cited Conklin's physical inability to perform the duties of a police officer among other reasons for the discharge. Englewood officials fired him in August 1993. During this period, Conklin's physician diagnosed him with a torn tendon. Surgery was recommended and ultimately performed in May 1994. Conklin's physician opined that his ability to walk, work, run, jump and stand were substantially limited from December 1991 to August 26, 1994.
 
 
 6
 Conklin brought suit in May 1994, alleging discrimination on the basis of sex and disability. He essentially claimed that he was disabled and that Englewood failed to reasonably accommodate him. As the district court stated, Conklin "contends that [the ADA] required [Englewood] to allow him to fill the position of police dispatcher (albeit at the salary paid to police officers), while he continued to recover from his ankle injury." The district court granted summary judgment to Englewood on both claims.
 
 
 7
 The district court specifically held that Conklin had failed to make out a prima facie ADA claim. First, the district court agreed with Englewood in holding that Conklin was not "disabled" under the ADA. Second, the district court held that Conklin was not a "qualified individual with a disability" as defined in the ADA because he could not perform the essential functions of the position that he held, patrolman, even with reasonable accommodation. The court also noted that Conklin did not desire a position as dispatcher, but rather wanted a new position: dispatcher with a police officer's salary. Third, the district court held that Englewood did not breach its duty to reasonably accommodate Conklin and thus did not discriminate against him. Conklin asserts that he has presented sufficient evidence of disability discrimination to present his case to a jury. He contends that the district court erred in its conclusions regarding the elements of his ADA cause of action.
 
 II. LAW
 
 8
 The district court's grant of summary judgment is reviewed de novo. Moore v. Holbrook, 2 F.3d 697, 698 (6th Cir.1993). Summary judgment is proper only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). All evidence is viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).
 
 
 9
 In Morisky v. Broward County, 80 F.3d 445, 447 (11th Cir.1996), the court succinctly outlined the analysis of an ADA claim:
 
 
 10
 The Americans With Disabilities Act provides that no covered employer shall discriminate against "a qualified individual with a disability because of the disability of such individual" in any of the "terms, conditions [or] privileges of employment." 42 U.S.C. § 12112(a). Indeed, the ADA imposes upon employers the duty to provide reasonable accommodations for known disabilities unless doing so would result in undue hardship to the employer. 42 U.S.C. § 12112(b)(5)(A). In order to establish a prima facie case of discrimination in violation of the ADA, the plaintiff must prove that (1) she has a disability; (2) she is a qualified individual; and (3) she was subjected to unlawful discrimination because of her disability. See Tyndall v. National Educ. Ctrs., 31 F.3d 209, 212 (4th Cir.1994).[3]
 
 
 11
 Assuming, arguendo, that Conklin is disabled for purposes of the ADA, his case fails because he cannot show that Englewood discriminated against him. The argument that Englewood failed to reasonably accommodate him by terminating his light-duty status and by not offering him a position as dispatcher is meritless for two reasons. First, Englewood is not required to reallocate job duties in order to change the essential functions of Conklin's job as a police officer. Milton v. Scrivner, Inc., 53 F.3d 1118, 1124 (10th Cir.1995). Although Conklin claims that he was willing to work as a dispatcher, he never applied for the position. Furthermore, he testified in his deposition that he was unwilling to perform the duties of a dispatcher unless he was paid his salary as a police officer (almost twice that of a dispatcher). While reassignment may be a reasonable accommodation, the ADA does not require Englewood to create a new position to accommodate Conklin. White v. York Int'l Corp., 45 F.3d 357, 362 (10th Cir.1995) (citing 29 C.F.R. pt. 1630, App. § 1630.2(o)). Conklin's suggestion that Englewood employ him as a dispatcher while paying him as a police officer is an unreasonable accommodation.[4]
 
 
 12
 AFFIRMED.
 
 WELLFORD, Circuit Judge, concurring:
 
 13
 Conklin performed regular police duties following his ankle injury in December, 1991, until September, 1992. Conklin then claimed that his ankle condition worsened, and he states in his brief (p. 5) that he continued to be "employed full-time by the city as a policy officer ... until March 11, 1993." After having been given accommodating light duty status, Conklin was later informed that his light duty status was over. He claims that he indicated interest in being a dispatcher, which then was paid substantially less than a police officer. Conklin took the position that his collective bargaining agreement committed the City to provide him the position of dispatcher as a light duty because he had a leg injury. Plaintiff's Brief at p. 4. That controversy, however, is not before us--Conklin may pursue his contract claims, if he has any, separately.
 
 
 14
 In my view, Conklin asked for an unreasonable accommodation from the standpoint of his disability act claim by demanding, in effect, that the City give him a new position--dispatcher duty at full pay. That demand would require significant extra expense on the part of defendant, involving an undue alteration of this small police department's operations. See 29 C.F.R. § 1630.2(p); Eckles v. Consolidated Rail Corp., --- F.3d ----, 1996 WL 467306 (7th Cir. Aug. 14, 1996) (reassignment of a disabled employee to displace an employee with more seniority in that position not mandated as a reasonable accommodation); Bolstein v. Reich, 3 AD Cases (BNA) 1761 (D.D.C.1995) (giving employee a position with more supervision and less complex assignments is not a reasonable accommodation), aff'd, 1995 WL 686236 (D.C.Cir.1995). Conklin can propose no reasonable accommodation under the ADA, and, therefore, the City has established its right to summary judgment in this respect.
 
 
 15
 I would hold also that Conklin was not a qualified individual. He admits that he filed a worker's compensation claim in which he claimed that he was unable to work. That position is inconsistent with his claim of being qualified to work with reasonable accommodation.[1] Conklin's doctor's opinion was that he could not walk, work, run, jump, and stand "for any extended period of time." Plaintiff's Brief at 8. Conklin was still able, however, to carry out many, if not most, of his home duties.
 
 
 16
 Conklin's condition is comparable to that of the unsuccessful ADA plaintiff with an ankle injury in Rogers v. International Marine Terminals, 87 F.3d 755 (5th Cir.1996), who was found to be unqualified. Also, although it is a close question, I believe that Conklin's condition, which is correctable by surgery, was only a "temporary" condition within the meaning of the Act and comparable to a broken limb, which is also correctable by surgery or prosthesis. There was no objectively expected "long term impact" or "permanent impact" involved in Conklin's essentially short term disability. See 29 C.F.R. § 1630.2(j)(2); Spath v. Berry Plastics Corp., 900 F.Supp. 893, 902-03 (N.D.Ohio 1995) (broken ankle requiring two surgeries not a disability within meaning of Act). Thus, I would conclude that defendant was entitled to summary judgment on the basis that Conklin was not qualified to perform the essential functions of an Englewood police officer's job.
 
 
 17
 In sum, Conklin did not carry "the burden of demonstrating that [he] could perform the essential functions of [his police] job with reasonable accommodation." Tyndall v. National Education Centers, Inc., 31 F.3d 209, 213 (4th Cir.1994) (emphasis added). In other words, Conklin, in my view, did not show that he was "qualified," or that the City failed reasonably to accommodate his temporary disability.
 
 
 18
 I would AFFIRM for these additional reasons.
 
 
 
 [1]
 As Conklin has failed to address his claim of sex discrimination on appeal, this court need not discuss the issue
 
 
 [2]
 Englewood's Chief of Police stated that he only intended to provide light duty to Conklin for 60 to 90 days because he was diverting work from his detective to provide tasks for Conklin. This diversion resulted in two employees with light duty
 
 
 [3]
 The prima facie elements recited in this opinion are consistent with this court's decision in Monette v. Electronic Data Sys. Corp., --- F.3d ----, 1996 WL 422962 (6th Cir.1996)
 
 
 [4]
 At oral argument, Conklin's counsel stated that he was willing to take the dispatcher job at dispatcher's pay and "grieve" under the collective bargaining agreement to obtain patrolman's pay. However, the record does not support such a concession
 
 
 [1]
 It also seems clear that Conklin worked for another employer in investigative work without obtaining written permission from defendant before his termination. Working in another capacity similar in some respects to police work is also inconsistent with his claimed disability