**Donald CALVIN, Plaintiff,**

v.

**FORD MOTOR COMPANY, Defendant.**

**No. CIV. 00–40448.**

United States District Court,
E.D. Michigan,
Southern Division.

Feb. 13, 2002.

Martin P. Krall, Roseville, MI, for plaintiff.

Jennifer A. Zinn, Ford Motor Company, Dearborn, MI, for defendant.

### ORDER

GADOLA, District Judge.

Before the Court is Defendant Ford Motor Company's Motion for Summary Judgment. For reasons set forth below, the Court will grant Defendant's motion.

### I. BACKGROUND

Plaintiff Donald Calvin is an hourly bargaining unit employee employed by Defendant. Plaintiff began work for Defendant on September 23, 1977 as a Tool & Die Maker. The parties do not dispute that Plaintiff suffers from tenosynovitis of the arms, elbows, and wrists and that he has a repaired rotator cuff in the right shoulder. These medical conditions placed several physical restrictions upon Plaintiff. In particular, Plaintiff is prohibited from pushing, pulling, or lifting more than fifteen pounds or from using vibrating tools. Further, Plaintiff cannot engage in excessive overhead work. Since 1982, Plaintiff has been unable to perform the duties of a Tool & Die Maker due to his physical restrictions.

On March 15, 1993, Defendant placed Plaintiff on a medical layoff claiming that there was no work within his restrictions. Plaintiff filed an action in this Court on January 18, 1994 (No. 94–70220). On October 9, 1994, Defendant re-employed Plaintiff in a "Casting Tracker" position, and this Court dismissed Plaintiff's action without prejudice on May 8, 1995. Plaintiff held the Casting Tracker position until November 12, 1999, when Defendant eliminated this position. Plaintiff was on medical layoff until February 14, 2001, when Defendant re-employed him in a newly created data entry position at the plant.

Plaintiff filed the Complaint in this case on September 28, 2000 in the State of Michigan Wayne County Circuit Court.

Plaintiff alleged two claims for relief. In Count I, Plaintiff alleged a violation of the Persons With Disabilities Civil Rights Act, Michigan Compiled Laws § 37.1101 et seq. ("MPDCRA"), and in Count II, Plaintiff alleged a violation of the Americans With Disabilities Act("ADA"), 42 U.S.C. § 12101 et seq. Defendant removed the case to the United States District Court for the Eastern District of Michigan on November 8, 2000, and the case was assigned to Judge Paul D. Borman. Discovery closed on May 4, 2001. On June 11, 2001, Defendant filed the present Motion for Summary Judgment. The case was transferred to this Court on September 27, 2001 pursuant to Local Rule 83.11 when Judge Borman discovered that Plaintiff's current action was a companion case to Plaintiff's 1994 action. This Court heard oral argument on November 21, 2001.

### II. DISCUSSION

#### A. LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Martin v. Ohio Turnpike Commission*, 968 F.2d 606, 608 (6th Cir.1992).

In considering a motion for summary judgment, the Court must view the facts

and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party. *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435–36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment where proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Accordingly, where a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.; Feliciano v. City of Cleveland,* 988 F.2d 649, 654 (6th Cir.1993).

Once the moving party carries the initial burden of demonstrating that no genuine issues of material fact are in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. As the United States Supreme Court has stated, "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted); *see*

*Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transportation Service, Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd,* 929 F.2d 701 (6th Cir.1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *see Cox v. Kentucky Department of Transportation,* 53 F.3d 146, 150 (6th Cir.1995).

**B. ANALYSIS**

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Under the ADA, "[t]he term 'discriminate' includes ... not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

■ As to Plaintiff's claim under Michigan law, the Sixth Circuit has noted that "[c]laims of handicap discrimination under Michigan law essentially track those under federal law." *Monette v. Electronic Data*

*Systems Corp.*, 90 F.3d 1173, 1178 n. 3 (6th Cir.1996). Therefore, the resolution of a claim under federal law will also dispense with claims under Michigan law. *Id.* At oral argument Plaintiff conceded that the resolution of his claims under federal law would also resolve his Michigan law claims. In addition, the Court notes that under Michigan law, an employer's duty to accommodate an employee's disability does not include transferring the employee to a new position. *Rourk v. Oakwood Hospital Corp.*, 458 Mich. 25, 580 N.W.2d 397, 399–400 (1998). Whether Defendant failed to reasonably accommodate Plaintiff's disability by not reassigning him to a new position is the primary issue in this case.

Defendant admits that it did not bring Plaintiff back to work prior to February 14, 2001 because it was unable to locate a position within Plaintiff's medical restrictions. (Def. Br. at 8). In order to establish a prima facie case of employment discrimination under the ADA when an employer admits that it relied upon the employee's disability in making an adverse employment decision:

1) The plaintiff bears the burden of establishing that he or she is "disabled."
2) The plaintiff bears the burden of establishing that he or she is "otherwise qualified" for the position despite his or her disability: a) without accommodation from the employer; b) with an alleged "essential" job requirement eliminated; or c) with a proposed reasonable accommodation.

*Monette*, 90 F.3d at 1186.

"The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer." *Id.*

■■ Defendant does not contest that Plaintiff is "disabled" under the ADA. The issue before the Court is therefore wheth-er Defendant violated the ADA by failing to reasonably accommodate Plaintiff's disability by not reassigning Plaintiff to a new job or restructuring existing jobs prior to February 14, 2001. When an employee claims that his employer failed to reasonably accommodate his disability, the employee bears the burden of 1) proposing an accommodation and 2) establishing that the proposed accommodation is objectively reasonable. *Monette*, 90 F.3d at 1183. Under the ADA, " 'reasonable accommodation' may include ... job restructuring ... [and] reassignment to a vacant position." 42 U.S.C. § 12111(9)(B); *Kiphart v. Saturn 'Corp.*, 251 F.3d 573, 586 (6th Cir. 2001). "[A]n employer need only reassign the employee to a vacant position." *Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 634 (6th Cir.1998). Further, "a reassignment will not require creating a new job, moving another employee, promoting the disabled employee, or violating another employee's rights under a collective bargaining agreement." *Id.* The employer has no obligation under the ADA to "waive legitimate, nondiscriminatory employment policies" when considering reassignment of a disabled employee. *Burns v. Coca–Cola Enterprises*, 222 F.3d 247, 257 (6th Cir. 2000).

Defendant asserts that it is entitled to summary judgment because Plaintiff has failed to establish that he proposed an objectively reasonable accommodation during the time of his medical layoff. The Court agrees with Defendant's assertion. The record reveals that Plaintiff discussed only one specific position with Defendant during the time of his layoff, the "Leader" position. Plaintiff testified at his deposition that he spoke with Catherine Grubb, one of Defendant's employees, about the possibility of obtaining a Leader position. (Def. Ex. D (Pl. Dep. at 111, 126)). Plaintiff claimed that Ms. Grubb offered him the Leader position but that she never

followed up with him. (Def. Ex. D (Pl. Dep. at 126–27)). However, it appears that Plaintiff never pursued the possibility of the Leader position with any of Defendant's other employees. (Def. Ex. D (Pl. Dep. at 127–28)).

Nevertheless, even if Plaintiff had requested reassignment to the Leader position, Defendant argues that Plaintiff never complied with the procedures required to obtain this position as set forth in the Collective Bargaining Agreement. The ADA does not exempt Plaintiff from having to comply with " 'legitimate, nondiscriminatory company policies defining job qualifications, prerequisites, and entitlements to intra-company transfers.' " *See Burns,* 222 F.3d at 258–59 (quoting *Dalton v. Subaru–Isuzu Automotive, Inc.,* 141 F.3d 667, 678 (7th Cir.1998)). Specifically, Defendant asserts that Plaintiff never submitted a bid for this position as he was required to do under the CBA. (Def. Ex. C (Grzebyk Aff. ¶ 5)). One of Defendant's managers, George Grzebyk, states through his affidavit that "[t]here are two two-week bidding windows per year during which individuals may submit a bid card. These bidding windows always occur in April and October. Plaintiff did not submit a bid card for a Leader position in April or October of 2000." (Def. Ex. C (Grzebyk Aff. ¶ 5)).

In response, Plaintiff does not dispute that he did not submit a bid for the Leader position. (Def. Ex. D (Pl. Dep. at 60)). When asked during his deposition why he had not submitted a bid, Plaintiff replied, "I don't know. The Leaders asked me to; the union asked me to, I just never did it." (Def. Ex. D (Pl. Dep. at 60)). However, at oral argument, Plaintiff suggested that the "Super–Seniority" provision of the CBA exempted him from the bidding process. Plaintiff also states through an affidavit attached to his brief that the Super–Seniority provision of the CBA "could have

been used to allow me to work in one of [the Leader] positions." (Pl.Ex. 5 (Calvin Aff. ¶ 4)). That provision states:

> Any employee who has been incapacitated at his regular work by injury or compensable occupational disease while employed by the Company may be employed in other work, in the plant or in any Unit of a multi-unit plant, which he can do, at the discretion of the Company after consultation with the Union *without regard to any seniority provisions of this Agreement.* Laid-off employees with work-related incapacities will be recalled in line with seniority only as openings occur.

(Pl.Ex. 4 (Master Agreement, Article VIII, Section 27, September 15, 1993)) (emphasis added).

Plaintiff's argument regarding the Super–Seniority provision fails for two reasons. First, Plaintiff admitted at his deposition that he was required to submit a bid in order to obtain the Leader position. (Def. Ex. D. (Pl. Dep. at 60)). Plaintiff also noted at his deposition that seniority was a factor in obtaining the Leader position; he stated that he had the requisite seniority "years ago" but that he never submitted a bid. (Def. Ex. D. (Pl. Dep. at 60)). Plaintiff has not adduced any evidence which would support the claim that the Super–Seniority provision of the CBA somehow exempted him from the bidding process. Second, the Super–Seniority provision itself does not appear to provide the exemption suggested by Plaintiff. Rather, this provision appears to address only the seniority requirement of a position. As noted above, Plaintiff stated at his deposition that while seniority was considered in obtaining a Leader position, he was also required to submit a bid. (Def. Ex. D. (Pl. Dep. at 60)). Plaintiff's assessment of the procedure for obtaining the Leader position is in agreement with that of George

Grzebyk, Defendant's manager. Mr. Grzebyk stated in his affidavit that pursuant to the CBA, Plaintiff was required to submit a bid in order to be placed in a Leader position. (Def. Ex. C. (Grzebyk Aff. ¶ 5)). Mr. Grzebyk also noted that seniority was a factor, stating, "Even if Plaintiff had submitted his name in the bidding process, he would not have been placed in a Leader position since he did not have the requisite seniority for the position." (Def. Ex. C. (Grzebyk Aff. ¶ 6)). In light of Plaintiff's admission and the affidavit of Mr. Grzebyk, Plaintiff's citation to the Super–Seniority provision, without more, is insufficient to refute Defendant's contention that Plaintiff was required to submit a bid in order to be considered for the Leader position. Therefore, Plaintiff has not adduced evidence that would demonstrate a genuine issue of material fact as to Defendant's assertion that Plaintiff was required to submit a bid for the Leader position and that Plaintiff failed to do so.

■ Plaintiff claims to have suggested other positions to which Defendant could have reassigned him. On November 16, 1999, Plaintiff's counsel wrote to Defendant, stating that it was Defendant's "duty of reasonable accommodation" to offer Plaintiff vacant positions. (Pl.Ex. 2 (Krall Ltr.)). Plaintiff's counsel also stated in the letter that he was advised of "positions in which employees are trained to use computers and that this would be a logical position to which Mr. Calvin may be assigned." (Pl.Ex. 2 (Krall Ltr.)). This generalized reference to "positions in which employees are trained to use computers" is insufficient to satisfy Plaintiff's burden to propose an objectively reasonable accommodation. *See Burns,* 222 F.3d at 259 (affirming summary judgment for defendant "[b]ecause prior decisions of this court hold that an employee has the burden of identifying *particular positions* to which he could be reassigned based on his qualifications") (emphasis added); *Cas-*

*sidy,* 138 F.3d at 635 (affirming summary judgment for defendant where "Plaintiff's proposed accommodation for essentially an allergen-free workplace ... was simply too vague to reasonably inform Defendant of a reasonable accommodation"); *Conklin v. City of Englewood,* No. 95–3786, 1996 WL 560370, at *2 (6th Cir. Oct.1, 1996) (finding plaintiff's claim that defendant failed to reasonably accommodate him meritless; noting that plaintiff had not applied for the position to which he claimed defendant should have reassigned him) (unpublished). Plaintiff offers no evidence that he proposed a particular computer position or that he took any affirmative steps to obtain such a position during his layoff. The letter from Plaintiff's counsel, which expresses only a vague suggestion for reassignment, does not satisfy Plaintiff's burden of proposing a reasonable accommodation.

On December 22, 1999, Plaintiff met with a representative of the union and a benefits representative during a process known as the "bump route." (Def. Ex. D (Pl. Dep. at 55–57)). During this process, an individual is given the opportunity to view other jobs in the plant and to "bump" into a new position based on seniority. (Def. Ex. D (Pl. Dep. at 55–57)). While it appears that the bump route involves a tour of the various plants at the facility, Plaintiff stated that he was merely taken to the benefits representative's office to view job postings. (Def. Ex. D (Pl. Dep. at 56–57)). Plaintiff offers no evidence that during the bump route he proposed an objectively reasonable accommodation.

In his deposition testimony, Plaintiff stated that he met with various individuals at the plant during his layoff. Plaintiff met on a monthly basis with Louis Hill, a worker compensation administrator. (Def. Ex. D (Pl. Dep. at 111)). When asked whether Plaintiff spoke with Hill about

available positions, Plaintiff stated that Hill would not know of such positions. (Def. Ex. D. (Pl. Dep. at 111)). Plaintiff stated that he spoke with Jackie Sheppard, whom he did not otherwise identify, and "asked ... about specific people like the three people they put in to Tool Coordination." (Def. Ex. D. (Pl. Dep. at 111)). Plaintiff could not recall what Jackie Sheppard said about those three individuals. (Def. Ex. D. (Pl. Dep. at 111–12)). Plaintiff also testified that he spoke with union representatives during his layoff but that he did not know whether he spoke to those representatives about open positions. (Def. Ex. D. (Pl. Dep. at 112)). The Court finds, therefore, that Plaintiff has not adduced evidence that he proposed reassignment to any specific position through the contacts that he made at the plant during his layoff.

Plaintiff has suggested during the course of this litigation that he is qualified for a variety of positions. Plaintiff asserts in his brief that "[t]hroughout this suit and the former suit" he suggested fifty-five positions that he could perform with his medical restrictions. (Pl. Br. at 4). In addition, in an affidavit signed July 1, 2001 and in his deposition testimony, Plaintiff identified a number of positions that he claims he could have performed with his medical restrictions. (Pl.Ex. 5 (Calvin Aff.)); (Pl.Ex. 6 (Pl. Dep. at 120–26)). However, Plaintiff does not point to evidence that he proposed any of these positions, aside from the Leader position, during the time of his layoff.

In light of the foregoing discussion, the Court finds that Plaintiff has failed to adduce evidence which would demonstrate that during the time of his layoff he made specific proposals for reassignment to any position other than the Leader position. As to the Leader position, Plaintiff has failed to adduce evidence which would demonstrate that he took the steps neces-

sary to obtain this position. Therefore, there is no genuine issue of material fact as to Defendant's claim that Plaintiff failed to propose an objectively reasonable accommodation. Accordingly, the Court will grant Defendant's motion for summary judgment.

Plaintiff has raised several other issues, none of which preclude summary judgment in favor of Defendant. The Court will now briefly address those issues. First, Plaintiff cites the regulations under the ADA for the proposition that Defendant was required to meet and confer with him to "determine the extent of the accommodation required." (Pl. Br. at 7) (citing 29 C.F.R. pt. 1630, App. § 1630.9). The regulations cited by Plaintiff state:

> "Once a qualified individual with a disability has requested provision of a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation. The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the qualified individual with a disability."

29 C.F.R. pt. 1630, App. § 1630.9.

The Sixth Circuit has noted that an employer's unwillingness to meet and confer with a disabled employee may result in an ADA violation where the employer's inaction "leads to a failure to reasonably accommodate an employee." *Brown v. Chase Brass & Copper Co.*, 14 Fed.Appx. 482, 487 n. 2 (6th Cir.2001) (citing *Beck v. University of Wis. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir.1996)). However, the Sixth Circuit has also noted that an employer's duty to confer with a disabled employee in search of a reasonable accommodation only arises where the employee's disability in some way impedes his ability to request an accommodation. *Brown*, 14 Fed.Appx. 482, at 487 n. 2 Therefore,

where an employee is able to request an accommodation but fails to do so, the employer's duty to confer does not arise. *Id.*

Plaintiff's argument that Defendant violated the ADA by failing to meet and confer with Plaintiff is unavailing for two reasons. First, it is not clear that Defendant failed to meet and confer with Plaintiff. Plaintiff admitted at his deposition that he spoke with Catherine Grubb, one of Defendant's employees, about the Leader position. (Def. Ex. D (Pl. Dep. at 111, 126)). Second, it appears that Defendant's duty to meet and confer with Plaintiff never arose. Plaintiff has not demonstrated that his disability in some way impeded his ability to propose a reasonable accommodation to Defendant. Other than discussing the Leader position, Plaintiff has not demonstrated that he made any other specific proposals for accommodation to Defendant. Therefore, absent a specific proposal, Defendant's duty to meet and confer never arose.

Plaintiff also cites an email message in which one of Defendant's Human Resources employees suggested that the company would not follow its "VO Operations Policy (relating to placement of medically restricted employees)" in the case of Plaintiff's layoff. (Pl. Br. at 10); (Pl.Ex. 1). However, Plaintiff offers no evidence explaining the VO Operations Policy, the duties that Defendant might have under the policy, or that Defendant actually failed to comply with the policy. In an affidavit attached to its reply brief, Defendant elaborates upon the policy as set forth in a "Letter of Understanding" between the union and Defendant. The policy as set forth in the Letter of Understanding states, "It was recognized that the local parties should work together to ensure that reasonable efforts are made to place medically restricted employees on work which they can perform in accordance with their seniority and applicable provisions of the Collective Bargaining Agreement." (Def. Reply (Giardini Aff.)). Plaintiff offers no evidence that this policy alters his burden under the ADA to propose an objectively reasonable accommodation, which, as discussed in this opinion, Plaintiff failed to do.

Next, Plaintiff argues that there are genuine issues of material fact as to "whether [D]efendant could have restructured jobs to provide [P]laintiff work prior to ... February 14, 2001," the date that Plaintiff was recalled to work. (Pl. Br. at 2). Plaintiff argues that Defendant did restructure duties when Plaintiff was recalled to work in February, 2001 but that "this did not occur prior to terminating employment or even within a reasonable time." (Pl. Br. at 12). However, Plaintiff does not point to any evidence that he proposed a restructuring of his Casting Tracker position or that he proposed any other position with restructured duties. Therefore, Plaintiff has not demonstrated the existence of a genuine issue of material fact as to whether Defendant should have restructured duties.

Lastly, Plaintiff argues that there are genuine issues of material fact as to whether he could perform the essential functions of the various positions that he allegedly proposed. (Pl. Br. at 2). However, as noted in this opinion, Plaintiff has not adduced evidence which would demonstrate that he met his burden of coming forward with specific proposals for reassignment. Therefore, it is irrelevant whether he could perform the essential functions of positions proposed in the course of this litigation, and the Court need not address this issue.

### III. CONCLUSION

For the reasons set forth in this opinion, this Court will grant Defendant's Motion for Summary Judgment.

**800**

Accordingly, this Court being fully advised in the premises,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [docket entry 7] is **GRANTED**.

**SO ORDERED**.