Anne TOWNLEY, Plaintiff,

v.

BLUE CROSS AND BLUE SHIELD
OF MICHIGAN, Defendant.

No. CIV. 01–40257.

United States District Court,
E.D. Michigan,
Southern Division.

April 3, 2003.

Sam G. Morgan, Sommers, Schwartz, Southfield, MI, for Anne Townley, plaintiff.

Bart M. Feinbaum, Blue Cross Blue Shield of Michigan, Detroit, MI, for Blue Cross and Blue Shield of Michigan, defendant.

## OPINION AND ORDER GRANTING SUMMARY JUDGMENT

GADOLA, District Judge.

Before the Court is Defendant's Motion for Summary Judgment. Plaintiff filed a timely Response, and Defendant filed a timely Reply Brief. The Court elects to proceed without a hearing. *See* E.D. Mich. LR 7.1(e)(2). For the reasons set forth below, the Court will grant the Motion.

## I. BACKGROUND

Defendant employed Plaintiff for approximately sixteen years. Plaintiff's most recent employment position with Defendant was as a "Pricer VII" in which she handled the payment of group health claims. After several disciplinary and corrective measures for chronic tardiness and absenteeism, Defendant terminated Plaintiff on August 16, 2000, citing excessive absences as the reason for the termination.

Plaintiff, however, alleges that Defendant's discrimination was the cause of her termination, and, on September 17, 2001, she initiated this civil action. Plaintiff's Amended Complaint contains four counts. Count I alleges that Defendant violated the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.* Plaintiff has a history of illness, including major depression. Count II is a similar claim under the State of Michigan's Persons with Disabilities Civil Rights Act, Mich. Comp. Laws § 37.1101, *et seq.* Count III alleges age discrimination under the State of Michigan's Elliott–Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101, *et seq.* Finally, Count IV alleges violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*

Prior to bring this civil action, Plaintiff applied to the Social Security Administration ("SSA") for Social Security Disability Insurance ("SSDI") benefits. On or about May 21, 2001, the SSA determined that Plaintiff was entitled to SSDI benefits. The SSA found that Plaintiff became disabled on August 16, 2000, the date of termination.

Similarly, on April 12, 2002, Plaintiff applied for long term disability ("LTD") benefits from Defendant's Non–Contributory National Long Term Disability Program ("the Plan"), which is an employee benefit plan managed by a third-party administrator known as the National Employee Benefits Administration ("NEBA"), a component of the national Blue Cross and Blue Shield Association. Plaintiff was ineligible for short term disability ("STD") benefits due to her termination. On November 8, 2002, the NEBA found that Plaintiff was disabled as of August 17, 2000, the day after termination, and approved her for LTD benefits. Plaintiff received full LTD benefits: in addition to monthly benefits going forward, the NEBA retroactively awarded Plaintiff LTD benefits to the earliest possible date for LTD benefits under the Plan: February 1, 2001, which was the first day of the sixth month following her date of disability.

On October 28, 2002, the Court, upon the stipulation of the parties, dismissed Count III (age discrimination) with prejudice. On December 2, 2002, Defendant filed the present Motion seeking summary judgment with respect to the three remaining counts.

## II. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Martin v. Ohio Tpk. Comm'n,* 968 F.2d 606, 608 (6th Cir.1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party. *See 60 Ivy St. Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. *See id.* at 1435–36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *See id.* at 1435.

A fact is "material" for purposes of summary judgment where proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *See Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, where a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *See id.; Feliciano v. City of Cleveland,* 988 F.2d 649, 654 (6th Cir.1993).

Once the moving party carries the initial burden of demonstrating that no genuine issues of material fact are in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. As the Supreme Court of the United States has stated, "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Dombrowski v. Eastland,* 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967)); *see also Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *See Lucas v. Leaseway Multi Transp. Serv., Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990) (Gadola, J.), *aff'd,* 929 F.2d 701 (6th Cir.1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *see also Cox v. Ky. Dep't of Transp.,* 53 F.3d 146, 150 (6th Cir.1995).

## III. ANALYSIS

### A. Americans with Disabilities Act Claim

### 1. Legal Standard

The ADA decrees that:

No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). The ADA defines "a qualified individual with a disability" as

an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.

42 U.S.C. § 12111(8). Further, under the ADA, the term "discriminate" includes

not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.

42 U.S.C. § 12112(b)(5)(A).

■ The United States Court of Appeals for the Sixth Circuit has established a multifactor test to better determine whether a plaintiff has made the required showing of discrimination under § 12112. *See Walsh v. United Parcel Serv.*, 201 F.3d 718, 724 (6th Cir.2000). To recover for discrimination under the ADA, a plaintiff must show she "(1) is an individual with a disability; (2) is otherwise qualified to perform the job requirements, with or without reasonable accommodation; and (3) was discharged solely on account of the disability." *Id.* (citing *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir.1996)). Where, as here, a plaintiff does not have direct evidence that the employer relied on the plaintiff's disability in making the adverse employment decision (i.e., where a plaintiff seeks to prove her case indirectly), the Sixth Circuit requires the following burden shifting approach:

Plaintiff may establish a prima facie case of discrimination by showing that: (1) he or she is disabled; (2) otherwise qualified for the position, with or without reasonable accommodation; (3) suffered an adverse employment decision; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced. The defendant must then offer a legitimate explanation for its action. If the defendant satisfies this burden of production, the plaintiff must introduce evidence showing that the proffered explanation is pretextual. Under this scheme, the plaintiff retains the ultimate burden of persuasion at all times.

*Walsh*, 201 F.3d at 725 (quoting *Monette*, 90 F.3d at 1186–87) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).

**2. Discussion**

■ Summary judgment for a defendant is appropriate when the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. Qualified individual status is an essential element of an ADA claim, and an ADA plaintiff has the burden of proving this essential element. *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999); *Walsh*, 201 F.3d at 724–25. Generally, an ADA plaintiff will fail to make a sufficient showing where she makes an admission that negates this essential ADA element. *See Cleveland*, 526 U.S. at 806, 119 S.Ct. 1597; *Brickers v. Cleveland Bd. of Educ.*, 145

F.3d 846, 849–50 (6th Cir.1998). For example, if in an application for SSDI benefits an ADA plaintiff states that she is totally unable to work, such a sworn assertion will tend to negate this essential ADA element. *See Cleveland,* 526 U.S. at 806, 119 S.Ct. 1597. Therefore, where a plaintiff's admission negates the qualified individual element of her ADA claim, the defendant is entitled to summary judgment.

■ In this case, Plaintiff has made admissions on three occasions that negate the qualified individual element of her ADA claim. First, at a deposition conducted on October 10, 2002, Plaintiff testified under oath as follows:

Q: [F]rom the date of your termination on August 16, 2000, through the present date, you've been unable to work; correct?

A: Correct.

Q: My question is, is that during that period from August 16, 2000, to the present, would you be able to work if there was an accommodation out there? [1]

A: No, I can't—no, I have too many physical problems.

Mot. Ex. 1 at 142. Later in the same deposition, Plaintiff augmented these sworn statements with the following:

Q: Are you able to return to work today as we speak, and resume your duties as pricer VII?

A: No, I'm not.

Q: No, you can't?

A: No, I can't. I have multiple physical problems now that have been—every time I go to the doctor, there's something else since I have left Blue Cross.

Q: So there's nothing the company can do today to bring you back to work as a pricer VII based on your current physical and emotional problems?

A: That's true.

*Id.* at 158–59.

Moreover, Plaintiff even conceded at the deposition that she should not have been working before her termination: "I shouldn't have been working when I was working." *Id.* at 141. This admission regarding Plaintiff's pre-termination inability to work is enhanced by portions of Plaintiff's Response contending (1) that, even before the termination, Plaintiff could not "maintain full time employment" and (2) that pre-termination medical records indicate that Plaintiff was a "person struggling with the classic symptoms of major depression, unreasonably convinced that she can hang on to her job." *See* Resp. Br. at 4, 17–18 (citing Resp. Ex. 33). According to Plaintiff's Response, these medical records suggest that she was unable to work as early as April 2000. *See id.* at 17–18 (citing Resp. Ex. 33).

In *Brickers v. Cleveland Board of Education,* the Sixth Circuit held that "[i]f a claimant cannot show that she can perform the essential functions of a given position with or without an accommodation, she is not a 'qualified individual with a disability' within the meaning of 42 U.S.C. § 12111(8), and accordingly fails to make out a prima facie case of discrimination." 145 F.3d at 850.[2] In *Brickers,* the plaintiff readily admitted that she was incapable of

---

**1.** Prior to asking this "accommodation" question, counsel provided Plaintiff with an explanation of what is meant by "accommodation." *See* Mot. Ex. 1 at 141.

**2.** The narrower holding of the Supreme Court in *Cleveland v. Policy Management Systems Corporation,* 526 U.S. 795, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999), which will be discussed in more detail *infra,* does not limit *Brickers.* First, *Brickers* involved an ADA plaintiff's admissions about an inability to perform certain lifting duties; it did not concern an ADA plaintiff's assertions regarding an application for SSDI benefits, as was the case in Cleveland. *See* 526 U.S. at 801–03, 119 S.Ct. 1597, 145 F.3d at 849–50. Second, the Supreme Court stated that its *Cleveland*-opinion did not "involve directly conflicting statements about purely factual matters, such as 'The light was red/green,' or 'I can/cannot raise my arm above my head.' An SSA repre-

performing one essential employment function, and the Sixth Circuit found that, as a matter of law, such an admission negated the qualified individual element of the plaintiff's ADA claim. *Id.* Here, Plaintiff did not only admit that she was incapable of performing one essential function of her former position; rather, she testified that she was incapable of performing any aspect of her position. Consequently, if the plaintiff in *Brickers* failed to make out a prima facie case of ADA discrimination, then, *a fortiori*, Plaintiff's admission, under oath, that she was and is totally and completely unable to work due to her medical condition negates the qualified individual element of her ADA claim. Therefore, Defendant is entitled to summary judgment on Plaintiff's ADA claim. *Id.*

This conclusion is bolstered by a second sworn statement made by Plaintiff in her efforts to secure LTD benefits from Defendant's Plan. In support of Plaintiff's successful application for LTD benefits, Plaintiff represented under oath that she was unable to work due to her medical conditions. *See* Mot. Ex. 25 at 1, 6. In awarding benefits, the NEBA agreed that Plaintiff was disabled and established her date of disability to be August 17, 2000, the day after termination. *See* Mot. Ex. 26 at 1. Plaintiff's admission and the NEBA's finding are significant given the Plan's requirements for a favorable LTD determination:

> You will *not* qualify for benefits if your medical condition does not prevent you from working in another occupation that has a salary level or range similar to that of your occupation at the time you stopped working.... The term "disabled" also excludes those claimants who have the ability to work with reasonable accommodations.... You are considered

disabled under the [Plan] if medical evidence satisfactory to the [Plan] indicates you are wholly prevented by reason of mental or physical disability from performing your regular occupation or any comparable occupation at this employer or another employer.

Mot. Ex. 24 at 2 (Plan documents describing requirements for a favorable disability determination) (emphasis in original). Thus, Plaintiff's representation to the Plan as well as the context in which it was made further support Plaintiff's deposition testimony negating the qualified individual element of her ADA claim.

■ Finally, the Court turns to Plaintiff's application for and receipt of SSDI benefits. The Supreme Court in *Cleveland v. Policy Management Systems Corporation* held that the pursuit and receipt of SSDI benefits do not automatically estop an ADA claim or even erect a strong presumption against the success of an ADA claim. 526 U.S. at 798, 805–07, 119 S.Ct. 1597. Nonetheless, to survive an ADA defendant's motion for summary judgment, an ADA plaintiff must sufficiently explain why her SSDI claim is not inconsistent with her ADA claim that she is a qualified individual under the ADA. *See id.* at 798, 806–07, 119 S.Ct. 1597.

Here, Plaintiff applied for and received SSDI benefits, and the SSA found her to be disabled as of August 16, 2000, the date of termination. *See* Resp. Ex. 42 at 1. In an apparent attempt to explain the inconsistency between her SSDI and ADA claims, Plaintiff points to medical records prepared by Plaintiff's psychotherapist and psychiatrist "which state that the emotional and situational trauma caused by the discharge worsened and intensified [Plaintiff's] major depression, resulting in a more severe disability." Resp. Br. at 20

---

sentation of total disability differs from a purely factual statement in that it often implies a context-related legal conclusion, name-

ly 'I am disabled for purposes of the Social Security Act.'" 526 U.S. at 802, 119 S.Ct. 1597.

(citing Resp. Exs. 33, 41). This is an insufficient *Cleveland* explanation because it simply reports that Plaintiff's situation deteriorated. Whether or not her condition deteriorated is irrelevant. This explanation merely shows, for instance, that on day one of her unemployment she was totally unable to work and on day one hundred she was even more unable to work. Such an explanation fails to refute the contention that Plaintiff continually was totally and completely unable to work. In other words, it does not show that Plaintiff was able to perform any function of her previous job with at least reasonable accommodation during any pertinent time period. *See Cleveland,* 526 U.S. at 798, 806–07, 119 S.Ct. 1597; *Back v. U.S. Postal Serv.,* 210 F.3d 371, 2000 WL 353543, at *4 (6th Cir.2000) (finding an ADA plaintiff provided a sufficient *Cleveland* explanation where he asserted that he was qualified to perform essential functions of his former job for a period of time). Thus, Plaintiff's attempted explanation will not defeat summary judgment. *See Cleveland,* 526 U.S. at 798, 807, 119 S.Ct. 1597.

In sum, under *Brickers,* as well as under *Cleveland,* Plaintiff cannot prevail on her ADA claim. Plaintiff's sworn statements negating an essential element of her ADA claim preclude a reasonable jury from concluding that she is a qualified individual under the ADA. As a consequence, the Court will grant summary judgment for Defendant on Plaintiff's ADA claim.

### B. Persons with Disabilities Civil Rights Act Claim

█ As to Plaintiff's claim under the State of Michigan's Persons with Disabilities Civil Rights Act, "the Sixth Circuit has stated that '[c]laims of handicap discrimination under Michigan law essentially track those under federal law.'" *Calvin v. Ford Motor Co.,* 185 F.Supp.2d 792, 794–95 (E.D.Mich.2002) (Gadola, J.) (quoting *Monette,* 90 F.3d at 1178 n. 3 (6th Cir.

1996)). Defendant argues that the federal and state disability discrimination claims should be treated as identical claims in this case, and Plaintiff does not dispute this argument in her Response. *See* Mot. Br. at 13; Resp. Br. at 24; *see also* Amend. Comp. at ¶ 3.b. "Therefore, the resolution of a claim under federal law will also dispense with claims under Michigan law." *Calvin,* 185 F.Supp.2d at 795 (citing *Monette,* 90 F.3d at 1178 n. 3). Accordingly, since the Court will grant summary judgment on Plaintiff's federal disability discrimination claim, the Court will likewise grant summary judgment on Plaintiff's state disability discrimination claim.

### C. Employee Retirement Income Security Act Claim

#### 1. Legal Standard

Section 510 of ERISA, 29 U.S.C. § 1140, mandates that it is unlawful for an employer to, *inter alia,* discharge, discipline, or discriminate against a participant in an ERISA-protected employee benefit plan "for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140.

█ To state a claim under § 1140, according to the Sixth Circuit, the "plaintiff must show that an employer had a specific intent to violate ERISA." *Smith v. Ameritech,* 129 F.3d 857, 865 (6th Cir.1997) (internal quotation marks omitted) (quoting *Humphreys v. Bellaire Corp.,* 966 F.2d 1037, 1043 (6th Cir.1992)). "In the absence of direct evidence of such discriminatory intent, the plaintiff can state a prima facie case by showing the existence of (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled." *Smith,* 129 F.3d at 865 (internal quotation marks omitted) (quoting *Humphreys,* 966 F.2d at 1043). Further, "a plaintiff must show a

causal link between [her ERISA-protected] benefits and the adverse employment decision. In order to survive [the defendant's] motion for summary judgment, [the] plaintiff must come forward with evidence from which a reasonable jury could find that the [defendant's] desire to avoid [employee benefit] liability was a determining factor in [the] plaintiff's discharge." *Smith,* 129 F.3d at 865 (internal quotation marks omitted) (quoting *Humphreys,* 966 F.2d at 1044).

■ Then, if the plaintiff states a prima facie case under § 1140, the defendant "can rebut the presumption of impermissible action raised by the prima facie case by introducing evidence of a legitimate, nondiscriminatory reason for its challenged action." *Smith,* 129 F.3d at 865 (internal quotation marks omitted) (quoting *Humphreys,* 966 F.2d at 1043). "This shifts the burden back to the plaintiff to show that the [defendant's] proffered reason was mere pretext . . . [, and the plaintiff] must either prove that the interference was a motivating factor in the [defendant's] actions or prove that [the defendant's] proffered reason is unworthy of credence." *Smith,* 129 F.3d at 865 (internal quotation marks omitted) (quoting and citing *Shahid v. Ford Motor Co.,* 76 F.3d 1404, 1411, 1413 (6th Cir.1996)).

### 2. Discussion

"Summary judgment is appropriate if [the] plaintiff fails to establish a prima facie case or fails to rebut the [defen-

dant's] proffer of a legitimate, nondiscriminatory reason for its actions." *Smith,* 129 F.3d at 865. In this case, Plaintiff fails in both regards.

■ Plaintiff attempts to establish a prima facie case of employee benefit discrimination by simply asserting that Defendant terminated Plaintiff in order to prevent Plaintiff from attaining STD benefits and to delay Plaintiff's receipt of LTD benefits. Beyond Plaintiff's mere allegations of Defendant's purported wrongdoing, Plaintiff does not even offer a hint of evidence from which a reasonable jury could find that Defendant's desire to avoid employee benefit liability was a determining factor in the plaintiff's termination. *Id.; see also Anderson,* 477 U.S. at 252, 106 S.Ct. 2505 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). " 'Mere personal beliefs, conjecture and speculation are insufficient to support an inference of [employee benefit] discrimination.' " *Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 584 (6th Cir.2003) (age discrimination) (quoting *Chappell v. GTE Prods. Corp.,* 803 F.2d 261, 268 (6th Cir.1986)); *Poff v. Chattanooga Group, Inc.,* 912 F.Supp. 298, 307 (E.D.Tenn.1996) (applying *Chappell* in the § 1140 setting). Therefore, Plaintiff's mere speculations do not justify denying summary judgment for Defendant.[3]

■ Furthermore, Defendant terminated Plaintiff because of her excessive

---

**3.** Plaintiff's reliance on *Pennington v. W. Atlas, Inc.,* 202 F.3d 902 (6th Cir.2000), in an effort to embellish her mere speculations about Defendant's purported wrongdoing, is misplaced. *Pennington* concerned the vesting of full pension benefits and the timing of termination. *Id.* at 907. The Sixth Circuit found in *Pennington* that the plaintiffs' testimony supported a prima facie case of pension discrimination because their testimony regarding their temporal proximity to full vesting of their pensions at the time of their termination raised an inference of intentional wrongdoing. *Id.* at 907 (citing *Humphreys,* 966 F.2d at 1043–45). Plaintiff's case is significantly different. Here, there is no time element. Unlike the situation in *Pennington,* the date on which Defendant terminated Plaintiff did not in any way affect her STD and/or LTD benefit situation. Plaintiff's speculation here creates no such reasonable inference of wrongdoing.

absenteeism and tardiness, and any negative repercussion Plaintiff suffered with respect to STD and/or LTD benefits was an incidental consequence of Plaintiff's termination. Absenteeism is a legitimate, nondiscriminatory reason for terminating an employee. *See Weigel v. Baptist Hosp. of E. Tenn.,* 302 F.3d 367, 379 (6th Cir. 2002); *Lindemann v. Mobil Oil Corp.,* 141 F.3d 290, 297 (7th Cir.1998) ("Absenteeism and tardiness have been recognized by this Court as legitimate, nondiscriminatory reasons for an employer to terminate an employee."). Plaintiff does not dispute that she was routinely absent and tardy. *See, e.g.,* Resp. Br. at 4 ("Plaintiff ... had a record of tardiness."); Resp. Br. at 21; Amend. Comp. at ¶ 18. More importantly, Plaintiff offers no evidence that comes close to rebutting Defendant's legitimate, nondiscriminatory reason as mere pretext. *See Smith,* 129 F.3d at 865; Resp. Br. at 25–26. Again, Plaintiff relies on nothing more than her own speculation concerning Defendant's purported wrongdoing. *See* Resp. Br. at 25–26. In other words, Plaintiff has provided no evidence to prove that Defendant's purported employee benefit interference was a motivating factor in the termination or that Defendant's legitimate, nondiscriminatory reason for the termination is unworthy of credence. *See Smith,* 129 F.3d at 865. Thus, the Court will grant summary judgment for Defendant on the ERISA claim.

## IV. CONCLUSION

**ACCORDINGLY, IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [docket entry 24] is **GRANTED.**

**SO ORDERED.**